1

2

3

4

5

6

7

8

9
UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

10

11

12    THOMAS GOOLSBY,                    )   Civil No. 09cv02654 WQH (RBB)
                                        )
13                    Plaintiff,        )   **ORDER GRANTING DEFENDANTS'**
                                        )   **MOTION TO DISMISS PLAINTIFF'S**
      v.                                )   **FIRST AMENDED COMPLAINT [ECF**
14                                      )   **NO. 13]**
      NEAL RIDGE, M.D.; M. MARTINEZ,    )
15    M.D.; C. WILSON, correctional     )
      officer,                          )
16                                      )
                      Defendants.       )
17    _____)

18        On May 10, 2011, this Court issued a Report and Recommendation

19    Granting Defendants' Motion to Dismiss Plaintiff's First Amended

20    Complaint [ECF Nos. 13, 20].  The next day, on May 11, 2011,

21    Defendants' Ex Parte Application for an Order Referring This Case

22    To the Magistrate Judge was filed, along with the Declaration fo

23    Sylvie P. Snyder and the Notice, Consent and Reference of a Civil

24    Action to a Magistrate Judge [ECF No. 21].  Plaintiff had consented

25    to magistrate judge jurisdiction when he filed his First Amended

26    Complaint.[1]  On May 19, 2011, United States District Court Judge

27    _____

28        [1] The Court will cite to the First Amended Complaint using the
      page numbers assigned by the electronic case filing system.

                                        1                    09cv02654 WQH(RBB)

William Q. Hayes granted Defendants' Ex Parte Application and referred the case to this Court [ECF No. 22]. Accordingly, in light of the consent to magistrate judge jurisdiction, this Order supercedes the Report and Recommendation issued on May 10, 2011 [ECF No. 20].

Plaintiff Thomas Goolsby, a state prisoner proceeding pro se and in forma pauperis, filed a Complaint against Defendants Ridge, Martinez, Sanchez, and Wilson on November 23, 2009, pursuant to 42 U.S.C. § 1983 [ECF Nos. 1, 4]. He filed an Amended Complaint, along with a Memorandum of Points and Authorities, on March 24, 2010 [ECF No. 5]. In his subsequent pleading, Plaintiff included Ridge, Martinez, and Wilson, but not Defendant Sanchez. (See Am. Compl. 1, ECF No. 5.) On September 16, 2010, Defendants Ridge, Martinez, and Wilson filed a Motion to Dismiss Plaintiff's First Amended Complaint, along with a Memorandum of Points and Authorities, the Declaration of J. Rivera, and the Declaration of R. Cobb [ECF No. 13]. The Court issued a Klingele/Rand Notice advising Plaintiff of Defendants' Motion to Dismiss, in part, for failure to exhaust, and allowing Goolsby time to present any additional evidence demonstrating exhaustion [ECF No. 15]. Plaintiff's Reply to Defendants' Motion to Dismiss, with Goolsby's "jail records" attached as an exhibit, was filed along with an exhibit nunc pro tunc to November 2, 2010 [ECF No. 17]. The Court construes this pleading as Plaintiff's Opposition.[2] On December 3, 2010, Defendants' Reply to Plaintiff's Opposition to Defendants'

---

[2] The Court will also cite to the Opposition using the page numbers assigned by the electronic case filing system.

09cv02654 WQH(RBB)

1    Motion to Dismiss Plaintiff's Amended Complaint was filed [ECF No.

2    18].

3       The Court has reviewed the Amended Complaint and attachment,

4    Defendants' Motion to Dismiss and attachments, Plaintiff's

5    Opposition and exhibits, and Defendants' Reply. For the reasons

6    stated below, Defendants' Motion to Dismiss is **GRANTED**.

7                 **I.  FACTUAL BACKGROUND**

8       Although Plaintiff is currently incarcerated at California

9    Correctional Institution in Tehachapi, California, the allegations

10   in the Amended Complaint arise from events that occurred while

11   Goolsby was housed at Richard J. Donovan Correctional Facility

12   ("Donovan") between December 16, 2008, and February 11, 2009. (Am.

13   Compl. 1, 3, ECF No. 5.) In his Amended Complaint, Goolsby alleges

14   that he was transferred from San Diego County Jail to Donovan on

15   December 16, 2008. (<u>Id.</u> at 3.) He claims that shortly before his

16   transfer to Donovan, medical doctors at San Diego County Jail had

17   diagnosed the following injuries:  a potentially torn rotator cuff,

18   sprained or strained back and neck muscles, possible strictures

19   (intestinal cuts), a human bite on his right hand, and damaged back

20   muscles. (<u>Id.</u> at 4-5.) Plaintiff asserts he received these

21   injuries because he fell down stairs, had an altercation with his

22   cell partner, and collapsed in his cell. (<u>Id.</u>) Goolsby states

23   that the doctors at county jail treated his injuries by giving him

24   a neck brace, a walker, and medications. (<u>Id.</u> at 5.) The doctors

25   ordered several tests to be performed on Plaintiff:  a magnetic

26   resonance imaging test ("MRI"), to ascertain whether Goolsby's

27   rotator cuff was torn; an endoscopy; and a colonoscopy. (<u>Id.</u>)

28

In count one of the Amended Complaint, Plaintiff contends that medical doctors Ridge and Martinez violated his constitutional rights to receive adequate medical care and to be free from cruel and unusual punishment. (Id. at 3; id. Attach. #1 Mem. P. & A. 1-2.) Specifically, Goolsby states that Defendants Ridge and Martinez were deliberately indifferent to his serious medical needs. (Am. Compl. 3, 8, 11, ECF No. 5.) Plaintiff argues that these Defendants were aware of his medical needs because of his previous doctors' orders for medical care and his repeated requests for medical attention. (Id. at 4, 6-8.) According to Goolsby, despite Defendants' awareness of his condition, they did not examine Plaintiff's injuries, order medication, or ensure that the medical tests ordered by the doctors at county jail were performed. (Id. at 11.) Plaintiff maintains that Ridge and Martinez also failed to order that his walker be returned to him after it was improperly taken by Defendant Wilson, a correctional officer at Donovan. (Id. at 9, 11.)

In counts two and three, Goolsby makes similar Eighth Amendment claims regarding Defendant Wilson's deliberate indifference to Plaintiff's serious medical needs and Wilson's failure to protect Plaintiff from the use of excessive force. (Id. at 15-16; id. Attach. #1 Mem. P. & A. 7 (citing Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)).) Goolsby alleges in count two that Wilson acted with deliberate indifference to Plaintiff's severe neck, back, and shoulder pain when Wilson took Goolsby's walker from him, forced him to live in a top-tier cell, and handcuffed his arms behind his back. (Am. Compl. 13-15, ECF No. 5; id. Attach. #1 Mem. P. & A. 5-6.) Plaintiff contends in count

09cv02654 WQH(RBB)

1  three that Defendant Wilson's actions constituted a failure to

2  protect Goolsby from "painful and unsafe activities." (Am. Compl.

3  16, ECF No. 5; <u>id.</u> Attach. #1 Mem. P. & A. 6-7.)

4  **II.   LEGAL STANDARDS APPLICABLE TO DEFENDANTS' MOTION TO DISMISS**

5  **FOR FAILURE TO STATE A CLAIM**

6  **A.   <u>Motions to Dismiss for Failure to State a Claim</u>**

7       A motion to dismiss for failure to state a claim pursuant to

8  Federal Rule of Civil Procedure 12(b)(6) tests the legal

9  sufficiency of the claims in the complaint. <u>Davis v. Monroe County</u>

10 <u>Bd. of Educ.</u>, 526 U.S. 629, 633 (1999). "The old formula -- that

11 the complaint must not be dismissed unless it is beyond doubt

12 without merit -- was discarded by the <u>Bell Atlantic</u> decision [<u>Bell</u>

13 <u>Atl. Corp. v. Twombly</u>, 550 U.S. 544, 563 n.8 (2007)]." <u>Limestone</u>

14 <u>Dev. Corp. v. Vill. of Lemont</u>, 520 F.3d 797, 803 (7th Cir. 2008).

15 A complaint must be dismissed if it does not contain "enough facts

16 to state a claim to relief that is plausible on its face." <u>Bell</u>

17 <u>Atl. Corp.</u>, 550 U.S. at 570. "A claim has facial plausibility when

18 the plaintiff pleads factual content that allows the court to draw

19 the reasonable inference that the defendant is liable for the

20 misconduct alleged." <u>Ashcroft v. Iqbal</u>, __ U.S. __, 129 S. Ct.

21 1937, 1949 (2009). This Court must accept as true all material

22 factual allegations in the complaint, as well as reasonable

23 inferences to be drawn from them, and must construe the complaint

24 in the light most favorable to the plaintiff. <u>Id.</u>, __ U.S. at __,

25 129 S.Ct. at 1949-50; <u>see also</u> <u>Cholla Ready Mix, Inc. v. Civish</u>,

26 382 F.3d 969, 973 (9th Cir. 2004) (citing <u>Karam v. City of Burbank</u>,

27 352 F.3d 1188, 1192 (9th Cir. 2003)); <u>Parks Sch. of Bus., Inc. v.</u>

28 <u>Symington</u>, 51 F.3d 1480, 1484 (9th Cir. 1995).

5

The Court does not look at whether the plaintiff will "ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see Bell Atl. Corp. v. Twombly, 550 U.S. at 563 n.8.   A dismissal under Rule 12(b)(6) is generally proper only where there "is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001) (citing Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)).

The Court need not accept conclusory allegations in the complaint as true; rather, it must "examine whether [they] follow from the description of facts as alleged by the plaintiff." Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted); see Halkin v. VeriFone, Inc., 11 F.3d 865, 868 (9th Cir. 1993); see also Cholla Ready Mix, 382 F.3d at 973 (citing Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994)) (stating that on Rule 12(b)(6) motion, a court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged[]").  "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

When resolving a motion to dismiss for failure to state a claim, the Court generally may not consider materials outside the pleadings. Schneider v. Cal. Dep't of Corrs., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); Jacobellis v. State Farm Fire & Cas. Co., 120 F.3d 171, 172 (9th Cir. 1997); Allarcom Pay Television Ltd. v. Gen.

Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995).  "The focus of any Rule 12(b)(6) dismissal . . . is the complaint."  Schneider, 151 F.3d at 1197 n.1.  This precludes consideration of "new" allegations that may be raised in a plaintiff's opposition to a motion to dismiss brought pursuant to Rule 12(b)(6).  Id. (citing Harrell v. United States, 13 F.3d 232, 236 (7th Cir. 1993); 2 James Wm. Moore et al., Moore's Federal Practice § 12.34[2] (3d ed. 1997) ("The court may not . . . take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a).")).

     "When a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal [i]s proper . . . ."  Parks Sch. of Bus., 51 F.3d at 1484 (citing Cooper v. Bell, 628 F.2d 1208, 1210 n.2 (9th Cir. 1980)).  The Court may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading . . . ."  Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002); Stone v. Writer's Guild of Am. W., Inc., 101 F.3d 1312, 1313-14 (9th Cir. 1996).

**B.   Standards Applicable to Pro Se Litigants**

     Where a plaintiff appears in propria persona in a civil rights case, the Court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt.  Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988).  The rule of liberal construction is "particularly important in civil rights cases."  Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992).

1    In giving liberal interpretation to a pro se civil rights
2    complaint, the Court may not "supply essential elements of claims
3    that were not initially pled." Ivey v. Bd. of Regents of the Univ.
4    of Alaska, 673 F.2d 266, 268 (9th Cir. 1982). "Vague and
5    conclusory allegations of official participation in civil rights
6    violations are not sufficient to withstand a motion to dismiss."
7    Id.; see also Jones v. Cmty. Redev. Agency, 733 F.2d 646, 649 (9th
8    Cir. 1984) (finding conclusory allegations unsupported by facts
9    insufficient to state a claim under § 1983). "The plaintiff must
10   allege with at least some degree of particularity overt acts which
11   defendants engaged in that support the plaintiff's claim." Jones,
12   733 F.2d at 649 (internal quotation omitted).

13       Nevertheless, the Court must give a pro se litigant leave to
14   amend his complaint "unless it determines that the pleading could
15   not possibly be cured by the allegation of other facts." Lopez v.
16   Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation
17   omitted) (citing Noll v. Carlson, 809 F.2d 1446, 1447 (9th Cir.
18   1987)).  Thus, before a pro se civil rights complaint may be
19   dismissed, the court must provide the plaintiff with a statement of
20   the complaint's deficiencies. Karim-Panahi, 839 F.2d at 623-24.
21   Where amendment of a pro se litigant's complaint would be futile,
22   denial of leave to amend is appropriate. See James v. Giles, 221
23   F.3d 1074, 1077 (9th Cir. 2000).

24   C.   **Stating a Claim Under 42 U.S.C. § 1983**

25       To state a claim under § 1983, the plaintiff must allege facts
26   sufficient to show (1) a person acting "under color of state law"
27   committed the conduct at issue, and (2) the conduct deprived the
28   plaintiff of some right, privilege, or immunity protected by the

8

Constitution or laws of the United States.   42 U.S.C.A. § 1983 (West 2003); Shah v. County of Los Angeles, 797 F.2d 743, 746 (9th Cir. 1986).

These Rule 12 (b)(6) guidelines apply to Defendants' Motion.

### III.   DEFENDANTS' MOTION TO DISMISS

Defendants Ridge, Martinez, and Wilson move to dismiss Plaintiff's Amended Complaint for failure to exhaust administrative remedies, failure to state a claim upon which relief may be granted, and under a theory of qualified immunity.   (Mot. Dismiss 1-2, ECF No. 13; id. Attach. #1 Mem. P. & A. 7, 22.)

**A.   Exhaustion**

    **1.   Motion to Dismiss Unexhausted Claims Pursuant to the Unenumerated Portions of Rule 12(b)**

Title 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA") states:  "No action shall be brought with respect to prison conditions under . . . 42 U.S.C. 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C.A. § 1997e(a) (West 2003).   The exhaustion requirement applies regardless of the relief sought. Booth v. Churner, 532 U.S. 731, 741 (2001) (citation omitted).

"'[A]n action is "brought" for purposes of § 1997e(a) when the complaint is tendered to the district clerk[]' . . . ."  Vaden v. Summerhill, 449 F.3d 1047, 1050 (9th Cir. 2006) (quoting Ford v. Johnson, 362 F.3d 395, 400 (7th Cir. 2004)).   Therefore, prisoners must "exhaust administrative remedies before submitting any papers to the federal courts."  Id. at 1048 (emphasis added).

Section 1997e(a)'s exhaustion requirement creates an affirmative defense. _Wyatt v. Terhune_, 315 F.3d 1108, 1119 (9th Cir. 2003). "[D]efendants have the burden of raising and proving the absence of exhaustion." _Id._ (footnote omitted). Defendants in § 1983 actions properly raise the affirmative defense of failure to exhaust administrative remedies through an unenumerated motion to dismiss under Rule 12(b). _Id._ (citations omitted).

Unlike motions to dismiss for failure to state a claim for which relief may be granted, "[i]n deciding a motion to dismiss for failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." _Id._ at 1119-20 (citing _Ritza v. Int'l Longshoremen's & Warehousemen's Union_, 837 F.2d 365, 369 (9th Cir. 1988)) (footnote omitted). Courts have discretion regarding the method they use to resolve such factual disputes. _Ritza_, 837 F.2d at 369 (citations omitted). "A court ruling on a motion to dismiss also may take judicial notice of 'matters of public record.'" _Hazleton v. Alameida_, 358 F. Supp. 2d 926, 928 (C.D. Cal. 2005) (citing _Lee v. City of Los Angeles_, 250 F.3d 668, 688 (9th Cir. 2001) (citations omitted)). But "if the district court looks beyond the pleadings to a factual record in deciding the motion to dismiss for failure to exhaust[,] . . . the court must assure that [the plaintiff] has fair notice of his opportunity to develop a record." _Wyatt_, 315 F.3d at 1120 n.14.

"[When] the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice." _Id._ at 1120 (citing _Ritza_, 837 F.2d at 368 n.3).

### 2.   The Administrative Grievance Process

"The California Department of Corrections ['CDC'] provides a four-step grievance process for prisoners who seek review of an administrative decision or perceived mistreatment:  an informal level, a first formal level, a second formal level, and the Director's level."  <u>Vaden</u>, 449 F.3d at 1048-49 (citing <u>Brown v. Valoff</u>, 422 F.3d 926, 929-30 (9th Cir. 2005)).  The administrative appeal system can be found in title 15, sections 3084.1, 3084.5, and 3084.6 of the California Code of Regulations ("CCR").[3]  <u>See Brown</u>, 422 F.3d at 929-30 (citing Cal. Code Regs. tit. 15, §§ 3084.1(a), 3084.5(a)-(b), (e)(1)-(2), 3084.6(c) (amended 2011)).

To comply with the CDC's administrative grievance procedure, an inmate must submit the grievance at the informal level "within 15 working days of the event or decision being appealed . . . ." Cal. Code Regs. tit. 15, § 3084.6(c) (2010); <u>see also</u> <u>Brown</u>, 422 F.3d at 929.  An inmate must proceed through all levels of the administrative grievance process before initiating a § 1983 suit in federal court.  <u>See</u> <u>Vaden</u>, 449 F.3d at 1051.

A prisoner's grievances must be "sufficient under the circumstances to put the prison on notice of the potential claims and to fulfill the basic purposes of the exhaustion requirement." <u>Irvin v. Zamora</u>, 161 F. Supp. 2d 1125, 1135 (S.D. Cal. 2001).

_____

[3] The Code sections governing the prison administrative grievance process were amended on December 17, 2010, effective January 28, 2011.  <u>See</u> Cal. Code Regs. tit. 15, §§ 3084 - 3084.8 (amended 2011).  Because Goolsby filed the Amended Complaint on March 24, 2010, the Court will use the regulations in effect at that time.  (<u>See</u> Am. Compl. 1, ECF No. 5); Cal. Code Regs. tit. 15, §§ 3084 - 3084.8 (2010) (current version at Cal. Code Regs. tit. 15, §§ 3084 - 3084.8 (2011)); <u>see also</u> <u>Shepard v. Cohen</u>, No. 1:09-cv-01628, 2011 U.S. Dist. LEXIS 6838, at *4 n.1 (E.D. Cal. Jan. 25, 2011).

Exhaustion serves several important goals, including "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." Jones v. Bock, 549 U.S. 199, 219 (2007) (citing Woodford v. Ngo, 548 U.S. 81, 88-91 (2006), Porter v. Nussle, 534 U.S. 516, 524 (2002)).

### 3. Plaintiff's Failure to Exhaust Allegations Against Defendant Wilson

In count two of the Amended Complaint, Goolsby alleges that Correctional Officer Wilson confiscated Plaintiff's walker. (Am. Compl. 12, ECF No. 5.) Goolsby claims that he pleaded for his walker back, explaining to Defendant Wilson that without it he would suffer "serious pain and muscle spasm[]s and cramp[]s." (Id. at 13.) Plaintiff argues that Wilson ignored his pleas and refused to allow him to use the walker. (Id.) Additionally, Defendant Wilson failed to assign Goolsby to a lower-tier cell. (Id. at 14). Instead, Wilson assigned him to an upper-tier cell, forcing Goolsby to climb up the stairs to his cell without a walker, causing him "insane amounts of pain." (Id.) Plaintiff further complains that Defendant Wilson handcuffed Goolsby's hands behind his back, "causing intense and excruciating pain in [Plaintiff's] hurt right shoulder." (Id.) According to Goolsby, this treatment caused him to be "bed ridden virtually for weeks." (Id.) He asserts that Wilson's conduct amounted to a constitutional violation. (Id. at 15.)

Defendant Wilson maintains that Plaintiff failed to exhaust the claim against him in count two of the Amended Complaint because Goolsby did not submit a grievance "directly addressing" Wilson's purported confiscation of Plaintiff's walker or his assignment of Goolsby to the upper tier. (Mot. Dismiss Attach. #1 Mem. P. & A. 7-8, ECF No. 13.) Although none of the Defendants are named in Plaintiff's grievance, Defendants claim that Goolsby only submitted a grievance regarding the medical care provided by Dr. Ridge and Dr. Martinez. (Id. at 2, 8.) Because Plaintiff has not properly exhausted the administrative remedies for his claims against Wilson, Defendants argue the allegations should be dismissed. (Id. at 8.)

### a.    Failure to Provide a Medically-Prescribed Appliance

According to Defendants, "In his First Amended Complaint, Plaintiff admits that the inmate grievance he filed related only to the lack of medical care: 'I filed a (602) for lack of medical care.'" (Mot. Dismiss Attach. #1 Mem. P. & A. 1, ECF No. 13. (quoting Am. Compl. 17, ECF No. 5).) Defendants contend that the grievance alleging that Drs. Ridge and Martinez failed to examine Plaintiff would not have put the prison on notice of a claim against Correctional Officer Wilson for taking Goolsby's walker. (Id. at 8.) Defendants state, "Thus, the inmate grievance cannot be considered to have indirectly addressed Plaintiff's walker[] claim against Defendant Wilson." (Id.)

Defendants also argue that Plaintiff's original Complaint mentioned only one grievance as well, and that grievance merely challenged Defendants Ridge and Martinez's alleged failure to provide adequate medical care. (Id. at 2 (citing Compl. 12, ECF

No. 1).)  To that end, Defendants ask the Court to consider the original Complaint that Goolsby filed on November 23, 2009.  (Id. at 1-2 (citing Andrews v. Metro North Commuter R. Co., 882 F.2d 705, 707 (2nd Cir. 1989) (quoting White v. Acro/Polymers, Inc., 720 F.2d 1391, 1396 n.5 (5th Cir. 1983))); see Compl. 1, ECF No. 1; Am. Compl. 1, ECF No. 5.)  On March 9, 2010, the Court dismissed Goolsby's initial Complaint for failing to state a claim; Plaintiff filed this Amended Complaint on March 24, 2010.  (Order 6-7, ECF No. 4; Am. Compl. 1, ECF No. 5.)

   "[W]hen a plaintiff files an amended complaint, '[t]he amended complaint supercedes the original, the latter being treated thereafter as non-existent.'"  Rhodes v. Robinson, 621 F.3d 1002, 1006 (9th Cir. 2010) (citing Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967)).  "[F]actual assertions in the pleading and pretrial orders, unless amended, are considered judicial admissions conclusively binding."  American Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988) (emphasis added).  Accordingly, Goolsby's Amended Complaint supercedes the initial Complaint, and the Court will consider the factual assertions in the Amended Complaint when analyzing whether Plaintiff exhausted his remedies. See Rhodes, 621 F.3d at 1006; see also American Title Ins. Co., 861 F.2d at 226.

   In his Opposition, Plaintiff maintains that he submitted a grievance asking to be examined by a physician, which indirectly exhausted his claim that Defendant Wilson took Goolsby's walker because the grievance was intended to aid him in retrieving his walker.  (See Opp'n 2, ECF No. 17.)  Plaintiff contends that to get his walker back, he would have to see a doctor, who would then have

1   to reissue a walker to Goolsby.  (Id.; see id. at 3.)  Plaintiff

2   explains:

3        I could have appealed C. Wilson directly, but that
         at best would only of [sic] reprimanded C. Wilson.  My
4        chief concern at the time wasn't punishing C. Wilson but
         getting to see the doctor to get my walker, medication
5        and tests ordered as was badly needed.  Theref[o]re the
         602 appeal I filed exhausted count 2.  As the action
6        requested was the keystone to the walker.

7   (Id. at 2.)  Goolsby asserts that his appeal requesting to be seen

8   by a physician exhausted his claim against Defendant Wilson for

9   taking Goolsby's walker.  (Id.)

10       When ruling on Defendants' Motion to Dismiss, the Court may

11  "look beyond the pleadings and decide disputed issues of fact."

12  Wyatt, 315 F.3d at 1119-20 (citing Ritza, 837 F.2d at 369).

13  Although Goolsby did not provide a copy of any administrative

14  grievance with his Opposition, Defendants submitted a copy of the

15  grievance as an exhibit to the Declaration of J. Rivera, a health

16  care appeals coordinator at Donovan.[4]  (Mot. Dismiss Attach. #2

17  Decl. Rivera Ex. B, at 8-9, ECF No. 13.)  Plaintiff's appeal reads

18  as follows:

19       A.  Describe Problem:  On December 16th 2008 I arrived at
         Richard J. Donovan from downtown county jail with a
20       bruised neck, damaged lower back, a torn rotator cuff and
         gastronomical issues.  For those debilitating medical
21       ailments, I was prescribed Metamucil, Prilosec, Morphine,
         [Dicyclomine], Neurotin, and [Flexeril]!  To date I've
22       yet to see a doctor and all my medication has been
         stopped except for Prilosec and a fiber pill.  I'm in
23       excruciating pain, and all my requests for medical
         attention has been ignored.  I've submitted 3 medical
24       requests without response.

25       B.  Action Requested:  To be evaluated by a licensed
         doctor as per Title 15 upon new appeal.  I'm being
26       subjected to cruel and unusual punishment.

27

28       ⁴ The Court will also cite to this Declaration using the page
    numbers assigned by the electronic case filing system.

09cv02654 WQH(RBB)

(<u>Id.</u> Ex. B, at 9.)  Additionally, Defendants attach the declarations of appeals coordinators who confirm that Goolsby only filed one grievance while incarcerated at Donovan and did not file any grievance against Correctional Officer Wilson.  (<u>Id.</u> Decl. Rivera 2 (citing <u>id.</u> Ex. A); <u>id.</u> Attach. #3 Decl. Cobb 2.)

"Prisoners need comply only with the prison's own grievance procedures to properly exhaust . . . ."  <u>Griffin v. Arpaio</u>, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing <u>Jones</u>, 549 U.S. at 218 (2007)).  Indeed, "exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances."  <u>Jones</u>, 549 U.S. at 219.  At the time Plaintiff filed his Amended Complaint, California prison regulations required inmates to lodge administrative appeals that "describe[d] the specific issue under appeal and the relief requested."  Cal. Code Regs. tit. 15, § 3084.2(a).  "[W]hen a prison's grievance procedures are silent or incomplete as to factual specificity, 'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'"  <u>Griffin</u>, 557 F.3d at 1120 (quoting <u>Strong v. David</u>, 297 F.3d 646, 650 (7th Cir. 2002)).  "The primary purpose of a grievance is to notify the prison of a problem and facilitate its resolution, not to lay groundwork for litigation."  <u>Id.</u>

Both Plaintiff and the Defendants cite to <u>Morton v. Hall</u>, 599 F.3d 942 (9th Cir. 2010).  (Mot. Dismiss Attach. #1 Mem. P. & A. 7-8, ECF No. 13; Opp'n 2, ECF No. 17.)  In <u>Morton</u>, the plaintiff argued that the grievance he submitted regarding the denial of visitation rights exhausted his assault claim because both claims arose out of the "same facts and circumstances."  <u>Morton</u>, 599 F.3d at 945-46.  The Ninth Circuit held that the denial of visitation

challenge did not exhaust the assault allegation.  Id. at 946.  The
court reasoned that the prison was not put on notice of the assault
claim because the original grievance did not mention the assault or
theorize that the two claims were related.  Id.

Here, Goolsby similarly did not mention Correctional Officer
Wilson or the confiscation of Plaintiff's walker in his grievance,
and Goolsby did not make clear that his request to be "evaluated by
a licensed doctor" was related to Correctional Officer Wilson's
taking of Plaintiff's walker.  (Mot. Dismiss Attach. #2 Decl.
Rivera Ex. B, at 9, ECF No. 13.)  Even construing the facts in the
light most favorable to Plaintiff, Goolsby's grievance does not
conform to California Code of Regulations section 3084.2(a) as it
relates to Defendant Wilson.  See Karam-Panahi, 839 F.2d at 623.
The grievance does not mention a walker, allege that Wilson took it
from Goolsby, or request any relief against Wilson.  (See Mot.
Dismiss Attach. #2 Decl. Rivera Ex. B at 8-9, ECF No. 13.)
Plaintiff did not conform to prison policies because he did not
place the prison on notice of his claims against Defendant Wilson.
See Cal. Code Regs. tit. 15, § 3084.2(a); Griffin, 557 F.3d at
1120; see also Jones, 549 U.S. at 219 (noting that the purpose of
the exhaustion requirement is to allow prisons to address problems
before being subject to suit).  Accordingly, the Motion to Dismiss
Goolsby's claim that Wilson confiscated his walker, alleged in
count two of the Amended Complaint, is **GRANTED**.

**b.   Failure to Assign Plaintiff to a Lower-tier Cell**

Defendants further argue that "Plaintiff filed no grievance
directly addressing Correctional Officer Wilson allegedly . . .
assigning Plaintiff to the upper tier."  (Mot. Dismiss Attach. #1

17

Mem. P. & A. 7, ECF No. 13) (citation omitted).)  Defendants
maintain that because Goolsby did not include the upper-tier cell
claim in his one grievance, the claim against Wilson should also be
dismissed for failure to exhaust.  (_Id._ at 7.)

     In his Opposition, Plaintiff does not specifically discuss
whether the grievance he submitted exhausted the cell assignment
allegation against Wilson.  (_See_ Opp'n 1-3, ECF No. 17.)  Goolsby
argues, however, that "[he] was in excruciating pain and the
'gatekeeper' to [his] problems being resolved was the doctor."
(_Id._ at 3.)  It appears that Plaintiff is asserting his grievance
exhausted his upper-tier cell claim against Wilson because the
doctors were the persons with the power to remedy the situation.
_See_ _Karam-Panahi_, 839 F.2d at 623 (construing pro se litigant's
statements liberally).

     With regard to the upper-tier cell allegation, Goolsby's
grievance does not conform to California's grievance procedures.
_See_ Cal. Code Regs. tit. 15, § 3084.2(a).  His appeal requesting
medical attention by a "licensed doctor" does not describe the
problem -- that Wilson improperly assigned Plaintiff to an upper
cell -- either directly or indirectly.  (_See_ Mot Dismiss Attach. #2
Decl. Rivera Ex. B, at 8, ECF No. 13.)  In fact, Goolsby does not
even allude to any dissatisfaction with Officer Wilson or with his
assignment to a top-tier cell.  (_See_ _id._)  Without reference to
Defendant Wilson or to the failure to place Goolsby in a lower-tier
cell, prison officials could not have been put on notice of the
alleged violation.  _See_ _Griffin_, 557 F.3d at 1120.  Therefore,
Plaintiff's claim that Wilson assigned him to an upper cell in
violation of the Eighth Amendment, also alleged in count two of the

1  Amended Complaint, is **DISMISSED**.  See id. at 1119; Cal. Code Regs.

2  tit. 15, § 3084.2(a).

3         **c.    Whether Leave to Amend Should Be Given**

4      It may no longer be appropriate to dismiss count two with

5  leave to amend if it is too late for Goolsby to properly exhaust

6  his administrative remedies.  See Woodford, 548 U.S. at 95.  A

7  prisoner would "have little incentive to comply with the system's

8  procedural rules unless noncompliance carries a sanction."  Id.

9  Goolsby is in that situation.  Because a grievance against

10 Defendant Wilson was not filed within fifteen working days of the

11 action being challenged, any attempt to file it now is untimely.

12 See Cal. Code Regs. tit. 15, § 3084.6(c).

13     Exceptions to the exhaustion requirement are limited.  See

14 Booth v. Churner, 532 U.S. at 741.  In Booth, the Supreme Court

15 explained, "Thus, we think that Congress has mandated exhaustion

16 clearly enough, regardless of the relief offered through

17 administrative procedures."  Id. (citing McCarthy v. Madigan, 503

18 U.S. 140, 144 (1992)) (footnote omitted).  "'Where Congress

19 specifically mandates, exhaustion is required[.]'"  Id. (quoting

20 McCarthy, id.)  Booth and Woodford effectively eliminated most

21 exceptions to exhaustion.

22     Goolsby's interaction with Defendant Wilson occurred between

23 late December, 2008, and February 11, 2009, which is more than two

24 years ago.  It is too late for Plaintiff to exhaust his

25 administrative remedies against Defendant Wilson for both the

26 walker confiscation and the cell assignment claims.  See id.; (Am.

27 Compl. 9-10, ECF No. 5.)  Because there are no applicable

28 exceptions to the exhaustion requirement, count two of Plaintiff's

1  Amended Complaint against Defendant Wilson is **DISMISSED** without

2  leave to amend for failure to exhaust.

3  **B.    Sua Sponte Dismissal of Claims**

4       The PLRA requires courts to review complaints filed by

5  prisoners against officers or employees of governmental entities.

6  28 U.S.C.A. §§ 1915(e)(2)(B), 1915A(b) (West 2006).  Courts must

7  dismiss complaints or any portion of complaints that are frivolous

8  or malicious, that fail to state a claim, or that seek monetary

9  relief from a defendant who is immune from such relief.  <u>Id.</u>;

10  <u>Lopez</u>, 203 F.3d at 1126-28 (applying § 1915(e)(2)(B)(ii)).

11       Section 1915(e)(2)(B)(ii) essentially "'parallels the language

12  of Federal Rule of Civil Procedure 12(b)(6).'"  <u>Lopez</u>, 203 F.3d at

13  1127 (quoting <u>Barren v. Harrington</u>, 152 F.3d 1193, 1194 (9th Cir.

14  1998)).  Section 1915(e)(2)(B)(ii) requires the Court to dismiss

15  the case if "'<u>at any time</u> . . . the court determines that . . . the

16  action or appeal . . . fails to state a claim on which relief may

17  be granted.'"  <u>Barren</u>, 152 F.3d at 1194 (quoting 28 U.S.C. §

18  1915(e)(2)(B)(ii)) (emphasis added in <u>Barren</u>).  The same standard

19  of review applies to a sua sponte dismissal under § 1915(e)(2)(B)

20  (ii) or a dismissal under Rule 12(b)(6) of the Federal Rules of

21  Civil Procedure.  <u>Huftile v. Miccio-Fonseca</u>, 410 F.3d 1136, 1138

22  (9th Cir. 2005) (citing <u>id.</u>).

23       Although the PLRA does not include failure to exhaust as a

24  basis for screening, "that is not to say that failure to exhaust

25  cannot be a basis for dismissal for failure to state a claim."

26  <u>Jones</u>, 549 U.S. at 216; <u>see</u> 28 U.S.C.A. § 1915(e)(2)(B)(ii).  "A

27  complaint is subject to dismissal for failure to state a claim if

28

1 | the allegations, taken as true, show the plaintiff is not entitled
2 | to relief." Jones, 549 U.S. at 215.

3 |     Here, Plaintiff's allegations indicate that Goolsby did not
4 | properly exhaust his administrative remedies against Defendant
5 | Wilson. See Cal. Code Regs. tit. 15, § 3084.2(a). In the Motion
6 | to Dismiss, Defendant Wilson does not explicitly move to dismiss
7 | count three for failure to exhaust even though Goolsby makes
8 | similar Eighth Amendment allegations against Wilson in counts two
9 | and three. (Mot. Dismiss Attach. #1 Mem. P. & A. 14, ECF No. 13;
10 | see Am. Compl. 15-16, ECF No. 5, id. Attach. #1 Mem. P. & A. 7.)
11 | In both counts, Goolsby complains of Wilson's deliberate
12 | indifference to his medical needs and Wilson's failure to protect
13 | Plaintiff from excessive force. Goolsby argues in count three that
14 | Wilson's conduct described in count two constituted a failure to
15 | protect Plaintiff from "painful and unsafe activities." (Am.
16 | Compl. 16, ECF No. 5; id. Attach. #1 Mem. P. & A. 6-7.) The
17 | actions complained of, therefore, are the same in counts two and
18 | three. Because Plaintiff did not properly exhaust his claims
19 | against Defendant Wilson in count two, Goolsby is not entitled to
20 | relief in count three of the Amended Complaint. See 42 U.S.C. §
21 | 1915(e)(2)(B)(ii). Therefore, the Court **DISMISSES** count three of
22 | the Amended Complaint sua sponte for failure to state a claim upon
23 | which relief can be granted. See id.; see also Fed. R. Civ.
24 | Procedure 12(b)(6). Like count two, Plaintiff no longer has time
25 | to exhaust this claim against Defendant Wilson, so it is **DISMISSED**
26 | without leave to amend.

21

## C.   <u>Failure To State a Claim</u>

Next, Defendants Ridge and Martinez move to dismiss count one of the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) because the allegations against them fail to state a claim.  (Mot. Dismiss Attach. #1 Mem. P. & A. 11, ECF No. 13.) Courts may grant a motion to dismiss if the complaint does not contain enough facts to state a claim that is "plausible on its face."  <u>Bell Atl. Corp.</u>, 550 U.S. at 570.  "[F]acial plausibility [is] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, __ U.S. at __, 129 S.Ct. at 1949.

### 1.   Defendant Ridge

Dr. Ridge seeks to dismiss the claim that he provided Goolsby with inadequate medical care in violation of the Eighth Amendment. (Mot. Dismiss Attach. #1 Mem. P. & A. 11, ECF No. 13.)  Ridge ultimately argues that the facts alleged are insufficient to state a deliberate indifference claim.  (<u>Id.</u> at 11-12.)

The Eighth Amendment requires that inmates have "ready access to adequate medical care."  <u>Hoptowit v. Ray</u>, 682 F.2d 1237, 1253 (9th Cir. 1982).  Deliberate indifference to medical needs violates the Eighth Amendment's prohibition against cruel and unusual punishment.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 103 (1976). Deliberate indifference to serious medical needs consists of two requirements, one objective and the other subjective.  <u>Jett</u>, 439 F.3d at 1096; <u>Lopez</u>, 203 F.3d at 1132-33 (quoting <u>Allen v. Sakai</u>, 48 F.3d 1082, 1087 (9th Cir. 1995)).  The plaintiff must first establish a "serious medical need" by showing that "failure to

22

treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"  Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991)).  "Second, the plaintiff must show the defendant's response to the need was deliberately indifferent."  Id. (citing McGuckin, 974 F.2d at 1060).

With regard to the objective requirement, "[e]xamples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'"  Lopez, 203 F.3d at 1131 (quoting McGuckin, 974 F.2d at 1059-60).

Under the subjective element, prison officials are deliberately indifferent to a prisoner's serious medical needs when they "deny, delay or intentionally interfere with medical treatment."  Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988).  "[T]he official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  Inadequate treatment due to medical malpractice, negligence, or even gross negligence, does not rise to the level of a constitutional violation.  See Wilson v. Seiter, 501 U.S. 294, 297 (1991) (quoting Estelle, 429 U.S. at 105-06); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).

A defendant's acts or omissions will not amount to a constitutional violation unless there is reckless disregard of a risk of serious harm to the prisoner.  Farmer, 511 U.S. at 836.

The inmate must allege that the defendant purposefully ignored or failed to respond to his pain or medical needs; an inadvertent failure to provide adequate care does not constitute a violation. Estelle, 429 U.S. at 105-06.  The official must have "know[n] that [the] inmate[] face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it."  Farmer, 511 U.S. at 847.

Here, as to the objective element, Goolsby claims that he was never seen by Dr. Ridge but was under his care for "severe and debilitating injuries, requiring . . . a walker and neck brace." (Am. Compl. 3, ECF No. 5.)  Plaintiff states that he had been diagnosed with a torn rotator cuff, strained back and neck muscles, and possible intestinal cuts.  (Id. at 4.)  He also alleges that the doctors at county jail had prescribed medications, a neck brace, and a walker for Goolsby, and they ordered that he receive several medical tests.  (Id. at 4-5.)  Doctor Ridge's failure to continue the medications for Plaintiff that were originally prescribed by the county jail physicians "exasperated [sic] [Plaintiff's] back, neck and shoulder injuries," and without the medications, Goolsby "began to suffer."  (Am. Compl. 6, ECF No. 5.) Specifically, he argues that Ridge's failure to continue Goolsby's muscle relaxant substitute, Robaxin, "caused [him] to be virtually bed ridden [sic] with muscle cramps and back and neck pain."  (Id. at 7.)  Plaintiff maintains that by the time he was transferred out of Dr. Ridge's care, Goolsby "still had not been seen or had [his] injuries examined," despite being in "tremendous pain."  (Id.)

Plaintiff has adequately alleged injuries "that a reasonable doctor or patient would find important and worthy of comment or

24

treatment . . . ." <u>Lopez</u>, 203 F.3d at 1131.  He has pleaded
sufficient facts satisfying the objective requirement that he
suffered from a serious medical need.  <u>See</u> <u>id.</u>

To succeed on an Eighth Amendment claim, however, the
Plaintiff must also satisfy the subjective element of deliberate
indifference.  <u>Jett</u>, 439 F.3d at 1096.  Goolsby must allege that
Defendant Ridge knew he faced a substantial risk of serious harm,
and acted with deliberate indifference to that harm.  <u>See</u> <u>Farmer</u>,
511 U.S. at 836; <u>Estelle</u>, 429 U.S. at 104.

Plaintiff argues that Dr. Ridge was deliberately indifferent
to his medical needs because Ridge "never bothered to see [him] or
evaluate [him] once . . . despite being informed immediately upon
[his] arrival of [his] serious medical issues."  (Am. Compl. 8, ECF
No. 5.)  Goolsby also claims that Defendant Ridge's failure to
prescribe medications and ensure the medical tests were performed
on Plaintiff amounted to deliberate indifference.  (<u>See</u> <u>id.</u> at 6-8;
Opp'n 4-5, ECF No. 17.)

Defendant Ridge, on the other hand, argues that his decisions
to alter Plaintiff's prescriptions and allow a nurse to examine
Plaintiff instead of doing so himself amount to a mere difference
of opinion.  (Mot. Dismiss Attach. #1 Mem. P. & A. 11-12, ECF No.
13.)

In the Amended Complaint, Plaintiff asserts that when he
arrived at Donovan on December 16, 2008, he met with a nurse who
told Dr. Ridge about Goolsby's medical appliances, medications, and
tests that were ordered by the physicians at county jail.  (Am.
Compl. 5-6, ECF No. 5.)  Plaintiff asked the nurse that he be seen
by a physician "as soon as possible" to continue the care for his

serious injuries.  (Id.)  Goolsby states, "[The nurse] telephoned Dr. Ridge in front of [Plaintiff] and relayed [his] situation." (Id. at 6.)  Plaintiff contends the nurse had a list of the orders sent from county jail.  (Id.)  After she explained this to Ridge, the nurse told Plaintiff that his medications would be continued for three days until he met with Ridge.  (Id.)

On December 19, 2008, three days later, Plaintiff's medications stopped, and his injuries were exacerbated.  (Id.) Goolsby submitted a request for medical attention because he still had not been seen for his injuries.  (Id.)  On December 24, 2008, Nurse T. Sheriff responded to the medical request by going to Goolsby's cell to discuss his condition.  (Id. at 7.)  Plaintiff claims that he informed nurse Sheriff of his "high levels of pain" and his need to be seen by the doctor.  (Id.)  Goolsby also contends that he inquired about the orders for medical tests issued by the doctors at county jail.  (Id.)  He claims that Nurse Sheriff gave Plaintiff Tylenol for his pain and then telephoned Defendant Ridge about Goolsby's complaints.  (Id.)  According to Goolsby, that same day he randomly and without notice stopped receiving the muscle relaxant substitute he had been taking since arriving at Donovan.  (Id.)  Despite being virtually bedridden and in "tremendous pain," Plaintiff claims that as of December 30, 2008, he had still not been seen by the doctor, so he filed another request for medical attention.  (Id.)  Goolsby argues that "[a]round this time," he was transferred out of Defendant Ridge's care.  (Id. at 8.)

09cv02654 WQH(RBB)

### a.    Failure to Order Medication

#### i.    Contradictory Allegations

In the Motion to Dismiss, Defendant Ridge identifies factual discrepancies between the original Complaint and the Amended Complaint, and he argues that the Court should not consider allegations in the Amended Complaint that contradict the initial claims. (See Mot. Dismiss Attach. #1 Mem. P. & A. 3-5, ECF No. 13.)  Specifically, Defendant Ridge asserts that Plaintiff's claim that his medications stopped on December 19, 2008, is contradicted by Goolsby's statements in the original Complaint. (Id. at 3 (citing Compl. 6, ECF No. 1).)  For example, Ridge argues that Plaintiff stated in the original Complaint that Ridge continued to prescribe the medications Goolsby was taking when he arrived at Donovan, "except Plaintiff was prescribed Robaxin 500 mg twice a day for seven days instead of Flexeril, three times a day, and one of the medications, MS Contin 30 mg, was ordered for only three days." (Id. at 3-4 (citing Compl. 7-8, ECF No. 1).)

Defendant Ridge discusses at length the factual discrepancies between the two pleadings.  (See id. at 3-5.)  He cites to case law suggesting that the Court should not consider allegations in the Amended Complaint that contradict those made in the original Complaint, and he argues that the Court may strike the altered assertions and dismiss the Amended Complaint on this basis.  (Id. at 3 (citing Bradley v. Chinron Corp., 136 F.3d 1317, 1324-25 (Fed. Cir. 1998)).)  Ridge also maintains that Goolsby's original Complaint serves as an admission.  (Id. (citing Andrews v. Metro North Communter R. Co., 882 F.2d 705, 707 (2nd Cir. 1989)).)

09cv02654 WQH(RBB)

But as discussed earlier, the amended complaint supercedes the original complaint, and factual assertions are no longer binding after they have been amended. <u>Rhodes</u>, 621 F.3d at 1006; <u>American Title Ins. Co.</u>, 861 F.2d at 226. Thus, because Goolsby amended his factual assertions about the medications he received, contradictory factual assertions in the original Complaint are not dispositive. <u>See</u> <u>Maloney v. Scottsdale Ins. Co.</u>, 256 F. App'x 29, 32 (9th Cir. 2007) ("When a complaint containing a judicial admission is amended, the information admitted in the original complaint is no longer conclusively established.)

Furthermore, Defendant Ridge's suggestion that the Court may strike the altered contentions and dismiss the Amended Complaint is unsupported by Ninth Circuit law. (<u>See</u> Mot. Dismiss Attach. #1 Mem. P. & A. 3, ECF No. 13.) Courts "allow pleadings in the alternative -- even if the alternatives are mutually exclusive." <u>PAE Gov't Servs., Inc., v. MPRI, Inc.</u>, 514 F.3d 856, 859 (9th Cir. 2007). The court in <u>PAE Gov't Servs.</u> explained:

> The short of it is that there is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations. Unless there is a showing that the party acted in bad faith -- a showing that can only be made after the party is given an opportunity to respond under the procedures of Rule 11 -- inconsistent allegations are simply not a basis for striking the pleading.

<u>Id.</u> at 860.

Defendant Ridge does not allege Plaintiff acted in bad faith. Without a finding of bad faith, factual allegations in the complaint "must be tested through the normal mechanisms for adjudicating the merits." <u>Id.</u> at 859 n.3. "Though false factual assertions may be evidence of bad faith, they are usually not;

28

generally, they are the result of ignorance, misunderstanding or undue optimism." Id.  Therefore, the Court will not strike any altered assertions or dismiss the Amended Complaint on the basis of inconsistent allegations.  See id. at 859 n.3, 860.

ii.  Difference of Opinion

Additionally, Defendant Ridge asserts that Plaintiff fails to state a claim because he "alleges a mere difference of medical opinion regarding the medications Plaintiff would have liked to have been given and what Plaintiff received . . . ." (Mot. Dismiss Attach. #1 Mem. P. & A. 11-12, ECF No. 13.)  According to Ridge, Plaintiff received five of seven originally-prescribed medications during the two weeks he spent under Dr. Ridge's care. (Id. at 11 (citing Compl. 7-8, ECF No. 1).)  Defendant contends, "Plaintiff having to switch from the stronger pain medication MS Contin to Tylenol, and having to stop taking one of seven medications after seven days does not show Dr. Ridge was aware of the existence of a substantial risk of harm to Plaintiff, but nevertheless disregarded the risk." (Id.)

Although Defendant supports his proposition by citing to Plaintiff's original, superceded Complaint, Ridge's factual assertions nonetheless align with Plaintiff's.  In his Opposition, Goolsby agrees that Ridge ordered all of Plaintiff's medications listed renewed. (Opp'n 4, ECF No. 17.)  Plaintiff specifically states that "[t]he attorney general makes a lot of the fact that Dr. [R]idge ordered [that Plaintiff receive] neurontin (nerve medication), mylicon, dicyclomine (stomach pills), metamucil (stomach medicine) and prilose[c] (heart burn)." (Id. at 6.)  Goolsby acknowledges, "Though I did receive these, just because

29

1  [Dr. Ridge] did 'something' does not allow him to escape

2  responsibility." (Id.)

3      Goolsby also states that three days after he arrived at

4  Donovan, his medication stopped, which exacerbated his back, neck,

5  and shoulder injuries. (Am. Compl. 6, ECF No. 5.) This allegation

6  presumably refers to Goolsby's pain medication, MS Contin. (Id. at

7  6-7; see also Mot. Dismiss Attach. #1 Mem. P. & A. 3-4, 11, ECF No.

8  13) (asserting that Ridge prescribed Plaintiff MS Contin for three

9  days on December 16, 2008, when he arrived at Donovan). Because he

10 was not receiving his pain medications, on December 24, 2008,

11 Goolsby met with the nurse who was going to "call the doctor

12 immediately." (Am. Compl. 7, ECF No. 5.) Nurse Sheriff told

13 Plaintiff that all she could give him until he met with the doctor

14 was Tylenol. (See id.) Plaintiff claims that on the same date he

15 stopped receiving the muscle relaxant, Robaxin. (Id.) He asserts

16 that his pain medication, MS Contin, stopped on December 19, 2008.

17     Goolsby contends that Defendant Ridge's decisions to provide

18 Tylenol instead of MS Contin after three days, and to stop

19 providing a muscle relaxant substitute after seven days, amounts to

20 deliberate indifference of his medical needs. (Am. Compl 6-8, ECF

21 No. 5.) Plaintiff also states, "This is not a matter of

22 'difference of opinion' on a particular treatment. There was no

23 treatment. Issuing Tylenol via the phone amounts to prescribing a

24 band-aid for a broken leg." (Id. at 8.)

25     As previously noted, in addition to asserting a serious

26 medical need, a plaintiff must also adequately allege that the

27 defendant knew he faced a substantial risk of harm and was

28 deliberately indifferent to that harm. Farmer, 511 U.S. at 836;

09cv02654 WQH(RBB)

<u>Estelle</u>, 429 U.S. at 104.   Negligent medical care is not the
equivalent of a constitutional violation.   <u>Estelle</u>, 429 U.S. at
104-05.   Moreover, a difference of opinion between an inmate and
his medical service provider does not rise to the level of
deliberate indifference.   <u>Toguchi</u>, 391 F.3d at 1058.   When an
inmate disagrees with a course of treatment, "[the] prisoner must
show that the chosen course of treatment 'was medically
unacceptable under the circumstances,' and was chosen 'in conscious
disregard of an excessive risk to [the prisoner's] health.'"   <u>Id.</u>
(quoting <u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th Cir. 1996)).

Goolsby has not alleged facts sufficient to show that
Defendant Ridge's prescriptions were medically unacceptable or were
chosen in conscious disregard of an excessive risk to his health.
<u>See id.</u>  Plaintiff has only provided facts indicating that he
preferred different medications than those provided by Defendant.
(<u>See</u> Am. Compl. 8,11.)  Ridge prescribed seven medications to treat
Goolsby's ailments, five of which lasted for the two weeks Goolsby
was under his care.  (<u>See</u> Am. Compl. 6-7, ECF No. 5; Mot. Dismiss
Attach. #1 Mem. P. & A. 11, ECF No. 13; Opp'n 4,6, ECF No. 17.)
Plaintiff preferred to continue receiving the medications initially
prescribed for him by other doctors and complains that Ridge's
decisions to prescribe MS Contin for only three days and substitute
Tylenol was not a "sound professional opinion."  (<u>See</u> Am. Compl. 6,
ECF No. 5; Opp'n 6, ECF No. 17.)  Goolsby has alleged nothing more
than a disagreement with his doctor's course of treatment.  <u>See</u>
<u>Toguchi</u>, 391 F.3d at 1058 (stating that mere disagreement does not
rise to the level of a violation); <u>see also Gauthier v. Stiles</u>, No.
09-56096, 2010 U.S. App. Lexis 22523 (9th Cir. Oct. 29, 2010)

1  (citing <u>Frost v. Agnos</u>, 152 F.3d 1124, 1130 (9th Cir.1998))

2  ("[A]lleged delays in administering pain medication, without more,

3  do not constitute deliberate indifference.").  Accordingly,

4  Plaintiff may have alleged a claim for negligence, but he has

5  failed to allege an Eighth Amendment claim against Ridge for

6  failing to prescribe Goolsby's medication of choice.

7             **b.   Failure to Examine Plaintiff**

8       Goolsby also contends that Dr. Ridge's failure to examine him

9  constitutes deliberate indifference to his medical needs.  (Am.

10 Compl. 11, ECF No. 5.)  Plaintiff argues that Ridge was notified of

11 his serious medical problems by a nurse who examined Goolsby, and

12 Plaintiff sent repeated written requests for medical attention to

13 Ridge.  (<u>Id.</u> at 6, 8.)  Plaintiff claims that despite being aware

14 of his injuries, Defendant Ridge allowed nurses to examine Goolsby

15 on two occasions, but he never examined Plaintiff himself.  (<u>Id.</u> at

16 6-8.)

17      In the Motion to Dismiss, Ridge argues that, while in his

18 care, Plaintiff received five of the seven previously prescribed

19 medications and was seen by a nurse who gave Goolsby Tylenol for

20 the pain.  (Mot. Dismiss Attach. #1 Mem. P. & A. 11-12, ECF No.

21 13.)  "Therefore, that Dr. Ridge did not personally examine

22 Plaintiff during the two weeks Plaintiff was in his care does not

23 show Dr. Ridge disregarded a known risk to Plaintiff's health."

24 (<u>Id.</u> at 11.)  Ridge maintains that Goolsby merely alleges a

25 difference of opinion regarding whether he should have been seen by

26 Doctor Ridge, as opposed to a nurse.  (<u>Id.</u> at 11-12.)  Because

27 differences of medical opinion between an inmate and a physician

28

are insufficient to state a claim, Defendant argues that Goolsby's allegations against him should be dismissed.  (See id. at 12.)

In response, Plaintiff asserts that when he arrived at Donovan, he was interviewed by a nurse who notified Ridge of Goolsby's medical condition, and the nurse told Plaintiff that he would be seen by Ridge within three days.  (Opp'n 4, ECF No. 17; see also Am. Compl. 5-6, ECF No. 5.)  Goolsby contends, "The problem, and the crux of my case is Dr. Ridge never examined me . . . ."  (Opp'n 4-5, ECF No. 17.)  Plaintiff argues that for Ridge to assert a difference of opinion, he must have first properly formulated an opinion after a medical evaluation.  (Id. at 5.)  Plaintiff complains that the extent of Ridge's information pertaining to Goolsby consisted of two sheets of paper from county jail -- a list of medications and a transfer summary.  (Id. at 4; id. Attach. #1 Ex. F, at 26-28.)  Plaintiff maintains that Ridge had none of his other medical files.  (Id. at 5.)  Goolsby states that "Dr. Ridge simply ignored [Plaintiff] knowing of [his] injuries, disregarding them and hoping [he] would go away."  (Id.)  Because Defendant Ridge never personally evaluated Plaintiff, Goolsby asserts the subjective element is met.  (Id.)

Goolsby, however, does not have the constitutional right to be personally examined by a doctor while incarcerated.  See Benge v. Scalzo, No. CV 04-1687-PHX-DGC(CRP), 2008 U.S. LEXIS 40782, at *25 (D. Ariz. May 21, 2008) ("Generally, a prison's practice of using nurses, instead of doctors, for primary medical treatment does not constitute a policy or custom that violates the Constitution."); Corley v. Prator, No. 06-0392, 2007 U.S. Dist. LEXIS 74599, at *12 (W.D. La. Oct. 4, 2007 (same)); Callaway v. Smith County, 991 F.

Supp. 801, 809 (D. Tex. 1998) (stating because the plaintiff was seen by nurses and not a physician does not violate the Constitution); see also Hayes v. Smith, No. CV04-620-S-EJL, 2007 U.S. Dist. LEXIS 61306, at *15 (D. Idaho Aug. 21, 2007) (finding that a physician's assistant was available to examine the prisoner and that the inmate was not entitled to select the medical care provider of his choice).

Plaintiff's contention that Dr. Ridge's failure to examine Goolsby constituted deliberate indifference cannot withstand the Motion to Dismiss. (See Am. Compl. 11, ECF No. 5.) Ridge renewed all seven of Goolsby's medications. (Opp'n 4, ECF No. 17.) Also, Plaintiff was seen and treated by a nurse at least twice during the fourteen days he was under Ridge's care. (See Am. Compl. 5-7, ECF No. 5.) When Plaintiff requested medical attention for his pain, the nurse prescribed him the pain reliever Tylenol. (Id. at 7.) Goolsby's contention that Ridge is liable because he did not examine Plaintiff himself is insufficient to state a claim. See Benge, 2008 U.S. Dist. LEXIS 40782, at *25; Corley, 2007 U.S. Dist. LEXIS 74599, at *12.

### c. Failure to Order Medical Tests Previously Ordered by Doctors at County Jail

Plaintiff also argues that Defendant Ridge was deliberately indifferent to his medical needs because Defendant failed to ensure that medical tests ordered by doctors at county jail were performed on Goolsby. (Am. Compl. 11, ECF No. 5.) Specifically, he claims that Dr. Ridge failed to order an MRI, a colonoscopy, an endoscopy, and failed to follow up with an orthopedic surgeon. (Id.)

34

Defendant Ridge, on the other hand, argues that this, too, was a mere difference of opinion.  (Reply 4, ECF No. 18.)  Ridge states:

> Whether Plaintiff needed the MRI and the endoscopy/ colonoscopy procedures while he was passing through R. J. Donovan Correctional Facility or whether these procedures could wait until after Plaintiff was transferred to another prison, was a matter of medical opinion given that, while at county jail, Plaintiff had been medically examined, had received several tests, and had been considered healthy enough to be released, rather than immediately being given these procedures.

(Id. at 5.)

Prison officials act with deliberate indifference when they "intentionally interfer[e] with . . . treatment once prescribed." Wakefield v. Thompson, 177 F.3d 1160, 1165 (9th Cir. 1999) (quoting Estelle, 429 U.S. at 104-05).  A violation may be found when a prison official deliberately ignores explicit orders of the inmate's previous doctor for reasons not related to the prisoner's medical needs.  Id. (citing Hamilton v. Endell, 981 F.2d 1062, 1066-67 (9th Cir. 1992) (holding that such intentional interference could be found when prison official forced an inmate to fly on an airplane, in violation of the prison physician's orders)).

"But the question whether an X-ray — or additional diagnostic techniques or forms of treatment — is indicated is a classic example of a matter for medical judgment.  A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." Estelle, 429 U.S. at 107.  At most, this constitutes medical malpractice.  (Id.)

Plaintiff's Amended Complaint does not allege facts showing that Dr. Ridge acted with deliberate indifference by not ensuring that medical tests for Goolsby, previously ordered by physicians at

35

county jail, were conducted.  Defendant Ridge, however, offers one reason for not having the medical procedures performed while Goolsby was "passing through R.J. Donovan Correctional Facility" on his way to another prison.  (Reply 5, ECF No. 18.)  In his Reply, Ridge asserts that "whether these procedures could wait until after Plaintiff was transferred to another prison, was a matter of medical opinion . . . ."  (<u>Id.</u>)

But deliberate indifference may be adequately alleged where a physician pursues a treatment plan that was not "derive[d] from sound medical judgment."  <u>Chance v. Armstrong</u>, 143 F.3d 698, 703-04 (2d Cir. 1998).  In <u>Chance</u>, the plaintiff had alleged that two doctors recommended a course of treatment, "not on the basis of their medical views, but because of monetary incentives."  <u>Id.</u> at 704.  This was sufficient to allege deliberate indifference.

Similarly, in <u>Jones v. Johnson</u>, 781 F.2d 769, 771 (9th Cir. 1986), the plaintiff alleged that he was told that he would not receive the necessary treatment because the county had a "tight budget."  The court noted, "We find no other explanation in the record than the budget concerns for denying Jones's surgery. Budgetary constraints, however, do not justify cruel and unusual punishment."  <u>Id.</u>  In another case, one doctor "nixed the diagnostic tests requested by the treating physicians."  <u>Goring v. Elyona</u>, No. 96 C 4521, 1997 U.S. Dist. LEXIS 1464, at *7 (N.D. Ill. Feb. 13, 1997).

> Goring insinuates that Dr. Elyea based his decision not to follow through on the request for further diagnostic measures recommended by Dr. Doe on fiscal rather than medical concerns.  Denial of necessary care for a serious medical condition because of budgetary constraints may give rise to a colorable claim under the Eighth Amendment.  The reasons for Elyea's decision are not disclosed in the limited record before the court.

1   Id. (internal citation omitted).   The court declined to dismiss the

2   claim against Dr. Elyea.

3       Here, Goolsby alleges that Defendant Ridge failed to perform

4   medical tests ordered by county jail doctors, even though Plaintiff

5   informed Nurse Sheriff that he was "in high levels of pain" and his

6   shoulder, back, and neck injuries were worsening.   (Am. Compl. 7,

7   ECF No. 5.)   The nurse called Dr. Ridge to tell him that Goolsby

8   should be seen as soon as possible.   (Id.)   On the same day the

9   nurse placed the call, Goolsby's muscle relaxant substitute

10  medication "just stopped."   (Id.)   "Refusing to treat a

11  progressively degenerative condition that is potentially dangerous

12  and painful if left untreated may constitute deliberate

13  indifference."   Jolley v. Correctional Managed Health Care, 3:04-

14  cv-1582 (RNC), 2008 U.S. Dist. LEXIS 106854, at *10, (D. Conn. Jan.

15  30, 2008).

16      Plaintiff has not asserted facts demonstrating that Ridge

17  failed to order the tests for improper reasons unrelated to

18  Plaintiff's medical needs.   See Wakefield, 177 F.3d at 1165;

19  Hamilton, 981 F.2d at 1066-67.   Nor has Goolsby alleged that Dr.

20  Ridge had control over when and how such tests were administered on

21  inmates.   See McGuckin, 974 F.2d at 1062 (noting petitioner failed

22  to provide evidence that either doctor was responsible for the

23  delayed scheduling of diagnostic examinations or that either

24  hindered performance of the examinations); see also Leer v. Murphy,

25  844 F.2d 628, 633 (9th Cir. 1988) (noting that whether a

26  defendant's acts or omissions caused a violation depends on the

27  specific duties and responsibilities of the particular defendant);

28  Bovarie v. Schwarzenegger, No. 08cv1661-LAB(NLS), 2010 U.S. Dist.

37

LEXIS 28004, at *12-13 (S.D. Cal. Mar. 22, 2010) (same).  Without
more, Goolsby's assertion that Ridge's failure to order diagnostic
tests constituted deliberate indifference is insufficient to state
a claim.  See Estelle, 429 U.S. at 107.

Although Plaintiff has sufficiently pleaded a serious medical
need, he has not asserted facts sufficient to show that Ridge was
deliberately indifferent to Goolsby's medical needs in violation of
the Eighth Amendment.  See Jett, 439 F.3d at 1096.  Accordingly,
Plaintiff's claims against Defendant Ridge in count one of the
Amended Complaint are **DISMISSED**.

Courts must give a plaintiff leave to amend an allegation
unless he could not possibly cure the claim by asserting other
facts.  Lopez, 203 F.3d at 1127 (quoting Doe, 58 F.3d at 497).  A
plaintiff should not be granted the opportunity to amend when doing
so would be futile.  See James, 221 F.3d at 1077.  The facts
alleged suggest that Goolsby is able to state a claim, plausible on
its face, that Dr. Ridge knowingly refused to treat Plaintiff's
serious medical needs and administer necessary diagnostic tests in
violation of the Eighth Amendment.  For this reason, the Motion to
Dismiss is granted with leave to amend.  See Lopez, 203 F.3d at
1127.

**2.  Defendant Martinez**

Plaintiff asserts that in late December 2008, he was
transferred to a different building at Donovan, "ad-seg building
#7," and into the care of Doctor Martinez.  (Am. Compl. 9, ECF No.
5.)  Goolsby claims that upon his arrival, Defendant Wilson
improperly took his walker from him and forced Plaintiff to live on
the second tier, requiring that he climb stairs to get to his cell.

09cv02654 WQH(RBB)

1  (Id.)  According to Goolsby, this caused the injuries to his

2  shoulder, back, and neck to "considerably worsen," and caused him

3  to lie in his bed in "agonizing pain."  (Id.)

4      Plaintiff contends that on January 5, 2009, he filed a request

5  to be seen by Dr. Martinez for his pain.  (Id.)  On January 11,

6  2009, Goolsby filed a request for medical attention because

7  Martinez was "ignoring [Plaintiff] and refusing to examine [him]

8  and treat [his] serious and deteriorating medical needs."  (Id. at

9  10.)  Goolsby maintains that two nurses, McArthur and Sanchez,

10  visited him on January 12, 2009.  (Id. at 9.)  "They were apalled

11  [sic] that [he] hadn't been seen yet.  A. Sanchez called Dr.

12  Martinez and told him of all [Goolsby's] injuries.  She then told

13  [Plaintiff he] would be seen on the next Dr. line[] (list of

14  inmates seen every week)."  (Id.)  Plaintiff requested that his

15  walker be returned to him and that he be given pain and nerve

16  medication.  (Id.)  Nurse Sanchez told Plaintiff that only a

17  physician could prescribe these items, and Goolsby would have to

18  wait to see one.  (Id. at 9-10.)  According to Plaintiff, the nurse

19  offered him Tylenol, but he never received it.  (Id. at 10.)

20      On January 22, 2009, Goolsby saw Defendant Martinez enter the

21  building.  (Id.)  Plaintiff prepared another grievance and gave it

22  to Correctional Officer Gamble to hand deliver to Dr. Martinez.

23  (Id.)  In the grievance, Goolsby explained his injuries and his

24  need for treatment and tests.  (Id.)  Plaintiff claims that he

25  watched Officer Gamble give the grievance to Defendant Martinez.

26  (Id.)  Goolsby watched Martinez read it and give it back to Gamble,

27  who then returned it to Plaintiff.  (Id.)  Gamble told Goolsby that

28  Dr. Martinez had told him, "'I know all about him (referencing

Goolsby) and his complaints, but I don't deal with whiners, give this back to him.'" (Id.)  Finally, Goolsby asserts that he was transferred from Donovan to California Correctional Institution in Tehachapi, California, on February 11, 2009, without having been seen by Dr. Martinez.  (Id.)

To state a claim for deliberate indifference under the Eighth Amendment, Plaintiff must allege a serious medical need and deliberate indifference to that need.  Jett, 439 F.3d at 1096; Lopez, 203 F.3d at 1132-33.  Goolsby has alleged a serious medical condition while under the care of Dr. Ridge.  Plaintiff argues that he had a similarly serious medical need while under Dr. Martinez's care.  (See Am. Compl. 8-11, ECF No. 5).  According to Goolsby, Martinez prescribed Plaintiff pain and nerve medication.  (See Opp'n 6, ECF No. 17.)  This suggests that Plaintiff had a medical condition worthy of medical attention.  Goolsby's allegations satisfy the objective element.  See Lopez, 203 F.3d at 1131.

As for the subjective element, Plaintiff asserts that despite his knowledge of Goolsby's ailments, Dr. Martinez failed to order medication, examine him, and ensure that the tests ordered by the physicians at county jail were performed.  (Am. Compl. 11, ECF No. 5.)  Plaintiff argues that these omissions rise to the level of deliberate indifference to his medical needs.  (Id.)

### a.  Failure to Order Medication

In the Motion to Dismiss, Dr. Martinez cites Plaintiff's original Complaint and contends that although he did not examine Goolsby, "each time he was contacted by nurse Sanchez, he prescribed pain medication for Plaintiff — albeit not the narcotic Plaintiff would have preferred — and on one of the contacts also

40

prescribed Robaxin." (Mot. Dismiss Attach. #1 Mem. P. & A. 12, ECF No 13.) Dr. Martinez prescribed Tylenol for Goolsby, but the doctor argues that Plaintiff has not presented facts showing Martinez was aware of a substantial risk of harm to Goolsby and disregarded that risk. (Id.) Defendant states he responded to Plaintiff's medical need. (Id.) Even if Goolsby preferred a different course of treatment, a difference in opinion is not actionable. (Id. (citing Jackson, 90 F.3d at 332).)

Plaintiff responds by arguing that Martinez was aware of his injuries and pain, based on the list of medications prescribed for Goolsby while he was at county jail as well as his transfer summary. (Opp'n 5, ECF No. 17.) Goolsby speculates that Martinez "made the inference" that not providing Plaintiff with medication would cause him severe pain. (Id.) Goolsby received some medication; still, he contends that Dr. Martinez cannot escape liability merely because he did "something." (Id. at 6.) Additionally, Plaintiff maintains that Martinez's refusal to accept the grievance that was hand delivered by Correctional Officer Gamble evidences Dr. Martinez's conscious disregard of Goolsby's medical needs. (Opp'n 7, ECF No. 17.) Plaintiff also argues that Goolsby's requests for medical care and the phone calls from the nurses provided Martinez with further notice of Plaintiff's serious medical needs. (Id.)

Plaintiff maintains that Doctor Martinez did even less to treat him than Doctor Ridge because Martinez only ordered Tylenol and nerve medication. (Id.); see American Title Ins. Co, 861 F.2d at 227. ("[S]tatements of fact contained in a brief may be considered admissions of the party in the discretion of the

41

district court.")  Goolsby argues that Doctor Martinez cannot be given "credit" for the medications the nurses gave him because they were only to provide him with temporary relief until he saw Martinez.  (Opp'n 6, ECF No. 17.)  According to Plaintiff, the Tylenol he received was inadequate.  "It was like using a pea shooter against an M1 tank. Yes, a pea shooter is a weaopon [sic] but rediuosly [sic] inadequate given the situation."  (Id. at 7.)

Plaintiff must allege that Martinez knew Goolsby faced a substantial risk of harm and was deliberately indifferent to that harm.  See Farmer, 511 U.S. at 836; Estelle, 429 U.S. at 104. Plaintiff, has not shown that Defendant Martinez's course of treatment was medically unacceptable.  See Toguchi, 391 F.3d at 1058.  Goolsby claims that Tylenol was not appropriate for the severity of the injuries; therefore, the failure to prescribe more appropriate medications amounts to deliberate indifference to his medical needs.  (See Am. Compl. 10-11, ECF No. 5.)

Martinez responded to Plaintiff's requests by ordering Tylenol and nerve medication.  (Opp'n 6, ECF No. 17.)  Although Plaintiff may have desired a stronger pain medication, a difference of opinion is not a constitutional violation.  See Jackson, 90 F.3d at 332.  Furthermore, "to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'"  Toguchi, 391 F.3d at 1058 (quoting Jackson, 90 F.3d at 332) (alteration in original).

Plaintiff has not alleged sufficient facts to state a claim, plausible on its face, that Martinez's course of treatment was

chosen in conscious disregard of an excessive risk to Plaintiff's
health.  See Toguchi, 391 F.3d at 1058.  Goolsby's medical records
from county jail do not indicate that the medications and
procedures Goolsby desired were necessary to avoid an excessive
risk to his health.[5]  (Opp'n Attach. #1 Ex. A, at 3, ECF No. 17.)
Notes on the medical encounter form, entered on December 15, 2008,
the day before Goolsby arrived at Donovan, stated that he "appears
to be doing well, [patient] going to prison this week and [work up
and follow up at] prison clinic."  The health information transfer
summary form and Plaintiff's patient profile, which lists
medications, do not suggest that Defendant Martinez knew of an
excessive risk to Plaintiff's health but disregarded that risk.
(See id. Ex. F, at 27-28); Farmer, 511 U.S. at 836.

Because Goolsby has not alleged sufficient facts to indicate
that the course of treatment was medically unacceptable or was
chosen in conscious disregard of a serious risk to Goolsby's
health, Plaintiff's assertions do not state a claim that Dr.
Martinez was deliberately indifferent.

### b.  Failure to Examine Plaintiff

Goolsby also claims that despite his requests for medical
attention, Dr. Martinez failed to examine him, and this constitutes
deliberate indifference.  (Am. Compl. 11, ECF No. 5.)

Defendant Martinez maintains that although he did not
personally examine Plaintiff, he responded to Plaintiff's requests

---

[5] The Court may consider the medical records Plaintiff
attached to his Opposition because his injuries were referenced in
the Amended Complaint.  (See Am. Compl. 4-5, ECF No. 5); In re Stac
Elecs. Sec. Litig., 89 F.3d 1399, 1405 n.4 (9th Cir. 1996) (noting
that documents whose contents are alleged in the complaint and
whose authenticity no party questions may be considered in
connection with a motion to dismiss).

by prescribing pain medication.  (See Mot. Dismiss Attach. #1 Mem.
P. &. A. 12, ECF NO. 13.)  Martinez suggests that because he
responded to Plaintiff's medical condition, Plaintiff's complaint
that he did not examine Goolsby is a difference in medical opinion.
(Id. (citing Jackson, 90 F.3d at 332).)

As explained above, Plaintiff does not have a constitutional
right to be personally examined by a physician while incarcerated.
See Benge, 2008 U.S. Dist. LEXIS 40782, at *25; Callaway, 991 F.
Supp. at 809.  Deliberate indifference requires that Defendant
Martinez purposefully ignored or failed to respond to Goolsby's
medical needs.  McGuckin, 974 F.2d at 1060.  Dr. Martinez
prescribed Plaintiff pain and nerve medication; the Defendant did
not ignore Goolsby's pain.  (See Opp'n 6, ECF No. 17); McGuckin,
974 F.2d at 1060.  Plaintiff has also failed to allege facts
sufficient to state a deliberate indifference claim against
Martinez for his failure to personally examine him.

> c.   **Failure to Order Medical Tests Previously Ordered by**
> **Doctors at County Jail**

Finally, like his claim against Dr. Ridge, Goolsby argues that
Dr. Martinez did not ensure the medical tests ordered by doctors at
county jail were performed on Goolsby.  (Am. Compl. 11, ECF No. 5.)
He asserts the Defendant should have ordered the MRI, colonoscopy,
and endoscopy.  (Id.)  In response, Doctor Martinez again contends
this was a difference of opinion.  (Reply 4-5, ECF No. 18.)
According to the Defendant, whether Goolsby needed the tests
performed while he was passing through Donovan or whether they
could wait was a medical judgment.  (Id. at 5.)  Martinez notes

44

that county jail physicians deemed Plaintiff healthy enough to be transferred to Donovan before the tests were performed.  (Id.)

Goolsby alleges that he was transferred to building #7, and Dr. Martinez's care, in late December 2008.  (Am. Compl. 9, ECF No. 5.)  By January 22, 2009, Plaintiff still had not been seen by Dr. Martinez, so Goolsby drafted an inmate grievance outlining his need of medical treatment.  (Id. at 10.)  When he was handed the grievance, the doctor responded, "'I know all about him (referencing Goolsby) and his complaints, but I don't deal with whiners, give this [the grievance] back to him.'" (Id.)  On February 11, 2009, Goolsby was transferred from Donovan, but he still had not been seen by Dr. Martinez.  (Id.)

Prison officials act with deliberate indifference when they intentionally interfere with medical treatment previously prescribed.  See Wakefield, 177 F.3d at 1165 (quoting Estelle, 429 U.S. at 104-05).  Generally, whether additional diagnostic tests are necessary is a matter of medical judgment.  Estelle, 429 U.S. at 107.  Like his claim against Dr. Ridge, Goolsby's allegation that Dr. Martinez failed to see to it that the medical tests ordered by physicians treating Goolsby at county jail were performed can amount to a callous disregard of a previous physician's orders.  See Wakefield, 177 F.3d at 1165.

Although implied, Plaintiff does not allege that Defendant Martinez failed to order the tests for any reasons other than medical ones.  Id.  Goolsby has not asserted Martinez had control over the scheduling and administration of diagnostic tests.  See McGuckin, 974 F.2d at 1062.  Allegations that Dr. Martinez chose not to immediately order the tests based upon medical judgment fail

45

to state a claim.  _See_ _Wakefield_, 177 F.3d at 1165; _see also_
_Magarrell v. P. Mangis, M.D., et al._, No. CIV S-04-2634-LKK-DAD P,
2009 U.S. Dist. LEXIS 74077 (E.D. Cal. Aug, 19, 2009) ("[A]
difference in medical opinion between doctors does not give rise to
a constitutional violation.") (citing _Toguchi_, 391 F.3d at 1059-60,
_Sanchez v. Vild_, 891 F.2d 240, 242 (9th Cir. 1989)).  Even so, a
doctor's decision not to pursue necessary medical treatment for
reasons unrelated to the exercise of sound medical judgment can
constitute deliberate indifference.  _See_ _Jones v. Johnson_, 781 F.2d
at 771 ("Budgetary constraints . . . do not justify cruel and
unusual punishment."); _Chance v. Armstrong_, 143 F.3d at 703-04
(stating that treatment should be based on "medical views," not
"monetary incentives"); _Goring v. Elyona_, No. 96 C 4521, 1997 U.S.
Dist. LEXIS 1464, at *7.

Plaintiff has not adequately asserted facts showing that
Martinez was deliberately indifferent to his medical needs.
Accordingly, Defendant Martinez's Motion to Dismiss Plaintiff's
Eighth Amendment claim against him is **GRANTED**.  Because this claim
may be cured by amendment, Goolsby is given leave to amend.  _See_
_Lopez_, 203 F.3d at 1127.

**D.   Qualified Immunity**

Doctors Ridge and Martinez contend that they are entitled to
qualified immunity.  (Mot. Dismiss Attach. #1 Mem. P. & A. 15, ECF
No. 13.)  Defendants assert they "did not have fair warning that
their actions were unconstitutional; rather, they 'could have
believed [their] actions lawful at the time they were undertaken.'"
(_Id._ (quoting _Friedman v. Boucher_, 580 F.3d 847, 858 (9th Cir.
2009)).)

"[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is immunity from suit for monetary damages, but it is not immunity from suit for declaratory or injunctive relief. Hydrick v. Hunter, 449 F.3d 978, 992 (9th Cir. 2006). It protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

When considering a claim for qualified immunity, courts engage in a two-part inquiry: Do the facts show that the defendant violated a constitutional right, and was the right clearly established at the time of the defendant's purported misconduct? Delia v. City of Rialto, 621 F.3d 1069, 1074 (9th Cir. 2010) (quoting Pearson v. Callahan, 555 U.S. 223, ____, 129 S. Ct. 808, 815-16 (2009)). Courts consider whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right." Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled on other grounds by Pearson, 555 U.S. 223, 129 S. Ct. 808. A right is clearly established if the contours of the right are so clear that a reasonable official would understand that what he is doing violates that right. Id. at 202 (quotation omitted). This standard ensures that government officials are on notice of the illegality of their conduct before they are subjected to suit. Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quoting Saucier, 533 U.S. at 206). "This is not to say that an official action is protected

09cv02654 WQH(RBB)

by qualified immunity unless the very action in question has previously been held unlawful . . . ." Id.

The Supreme Court recently found that the sequence of this two-step inquiry is no longer "an inflexible requirement." Pearson, 555 U.S. at ___, 129 S. Ct. at 818. Thus, it is within the court's discretion to decide which step to address first. Id.; see Delia, 621 F.3d at 1075 (citing Brooks v. Seattle, 599 F.3d 1018, 1022 n.7 (9th Cir. 2010); Bull v. City & County of San Francisco, 595 F.3d 964, 971 (9th Cir. 2010)). "If the Officers' actions do not amount to a constitutional violation, the violation was not clearly established, or their actions reflected a reasonable mistake about what the law requires, they are entitled to qualified immunity." Brooks, 599 F.3d at 1022 (citing Blankenhorn v. City of Orange, 485 F.3d 463, 471 (9th Cir. 2007)); see James v. Rowlands, 606 F.3d 646, 651 (9th Cir. 2010) (quoting Pearson, 555 U.S. at ___, 129 S. Ct. at 816, 818).

This Court has determined that Goolsby has not adequately alleged that Defendants' failure to personally examine him or prescribe the medications Plaintiff preferred amounted to constitutional violations. The Court has dismissed these claims against Ridge and Martinez without leave to amend. For these claims, the inquiry may end there. Pearson, 555 U.S. at ___, 129 S. Ct. at 818 ("In some cases, a discussion of why the relevant facts do not violate clearly established law may make it apparent that in fact the relevant facts do not make out a constitutional violation at all."); Saucier, 533 U.S. at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning

qualified immunity."); <u>James</u>, 606 F.3d at 651 (stating that courts may grant immunity if the facts alleged do not make out a constitutional violation).

The claims regarding the failure to undertake diagnostic tests ordered by treating physicians at county jail are dismissed with leave to amend. Accordingly, it is premature to consider qualified immunity for this aspect of Plaintiff's claims. See <u>Proctor v. Felker</u>, No. Civ. S-08-3158-JAM GGH P, 2009 U.S. Dist. LEXIS 114490, at *10 (E.D. Cal. Dec. 9, 2009). Defendants Ridge and Martinez are entitled to qualified immunity from liability for the claims relating to their failure to personally examine Goolsby and to prescribe certain medications. The Motion to Dismiss Goolsby's claim for civil damages against both Defendants based on these allegations is **GRANTED** without leave to amend. Drs. Ridge's and Martinez's remaining claim of qualified immunity is denied as premature.

**E.   Injunctive Relief**

Plaintiff also seeks an injunction preventing defendants "from denying medical care, and treatment ordered by county jails doctors and medical staff, so as to prevent disruptions in inmate treatment plans. (Am. Compl. 18, ECF No. 5.) Goolsby also seeks to "make CDCR obtain county jail medical records on new arriving inmates." (<u>Id.</u>)

Defendants contend Plaintiff is not entitled to an injunction because he seeks to assert the rights of other inmates without the standing to do so. (Mot. Dismiss Attach. #1 Mem. P. & A. 16, ECF No. 13.) Defendants also note that because Plaintiff is no longer

49

1   an inmate housed at Donovan, there is no risk of continuing or

2   future violations.  (Id.)

3        Goolsby argues that he has a reasonable expectation of being

4   an inmate at Donovan again.  (Opp'n 9, ECF No. 17.)  He claims he

5   could easily be taken back to Donovan for another case.  (Id.)  "In

6   all these circumstances [I] would go from SDCJ to RJD.  None of my

7   medical records would follow allowing problems in continuity of

8   care."  (Id. at 9.)  Goolsby concludes that injunctive relief is

9   not moot.  (Id.)

10       Injunctive relief is an equitable remedy that is appropriate

11  where the plaintiff can show he will suffer a "likelihood of

12  substantial and immediate irreparable injury" if an injunction is

13  not granted.  Hodgers-Durgin v. De La Vina, 199 F.3d 1037, 1049

14  (9th Cir. 1999) (en banc) (quoting City of Los Angeles v. Lyons,

15  461 U.S. 95, 111 (1983)); see also Doran v. Salem Inn, Inc., 422

16  U.S. 922, 932 (1975).

17       The traditional criteria for granting an injunction are:

18  "'(1) a strong likelihood of success on the merits; (2) the

19  possibility of irreparable injury to the plaintiffs if injunctive

20  relief is not granted; (3) a balance of hardships favoring the

21  plaintiffs; and (4) advancement of the public interest.'"

22  Mayweathers v. Newland, 258 F.3d 930, 938 (9th Cir. 2001) (quoting

23  Textile Unltd., Inc. v. A.BMH & Co., 240 F.3d 781, 786 (9th Cir.

24  2001).  Under the alternative test for granting injunctive relief,

25  the Court examines whether "serious questions are raised and the

26  balance of hardships tips sharply in favor of the moving party."

27  Stuhlbarg Intern. Sales Co. v. John D. Brush & Co., 240 F.3d 832,

28  840 (9th Cir. 2001) (citing Dr. Seuss Enters. v. Penguin Books USA,

1  <u>Inc.</u>, 109 F.3d 1394, 1397 n.1 (9th Cir. 1997)).  Under either

2  measure, Plaintiff is not entitled to injunctive relief.

3       Goolsby's remedies are limited by the PLRA.  Section 3626(a)

4  of the Act states, "Prospective relief in any civil action with

5  respect to prison conditions shall extend no further than necessary

6  to correct the violation of the Federal right of a particular

7  plaintiff or plaintiffs."  18 U.S.C.A. § 3626(a)(1)(A).  This

8  statutory restriction limits available relief.

9       Here, Goolsby requests an injunction preventing Defendants

10  from denying medical care ordered by county jail medical staff and

11  requiring CDCR to obtain county jail medical records for new

12  inmates arriving at Donovan.  (Am. Compl. 18, ECF No. 5.)  The

13  Court does not have jurisdiction to issue wide-reaching injunctions

14  to remedy inadequacies in prison administration that extend beyond

15  any actual injury suffered by a plaintiff.  <u>Lewis v. Casey</u>, 518

16  U.S. 343, 357 (1996).  "The remedy must of course be limited to the

17  inadequacy that produced the injury in fact that the plaintiff has

18  established."  <u>Id.</u> (citing <u>Missouri v. Jenkins</u>, 515 U.S. 70, 88, 89

19  (1995)).

20       Additionally, Goolsby has failed to demonstrate that he may

21  suffer an imminent injury.  In <u>City of Los Angeles v. Lyons</u>, 461

22  U.S. at 101-02, the Supreme Court explained that "[t]he plaintiff

23  must show that he 'has sustained or is immediately in danger of

24  sustaining some direct injury' as a result of the challenged

25  official conduct and the injury or threat of injury must be both

26  'real and immediate,' not 'conjectural' or 'hypothetical.'"

27  Goolsby is no longer housed at Donovan, the location where the

28

09cv02654 WQH(RBB)

1  Defendants are employed.  (See Am. Compl. 1, ECF No. 5.)  Thus,

2  Plaintiff has failed to demonstrate an imminent injury.

3       Goolsby is not entitled to injunctive relief unless he can

4  show that he will suffer substantial and immediate irreparable

5  injury for which there is no adequate legal remedy.  Easyriders

6  Freedom F.I.G.H.T. v. Hannigan, 92 F.3d 1486, 1495 (9th Cir. 1996).

7  "Under any formulation of the test [for injunctive relief],

8  plaintiff must demonstrate that there exists a significant threat

9  of irreparable injury."  Oakland Tribune, Inc. v. Chronicle Publ'g

10 Co., 762 F.2d 1374, 1376 (9th Cir. 1985).  Plaintiff has made no

11 showing of irreparable harm.  In addition, because he is no longer

12 housed at Donovan, Goolsby lacks standing to seek injunctive relief

13 directed at these Defendants.  For all these reasons, Goolsby's

14 request for an injunction is moot and is **DENIED**.

15                     **II.  CONCLUSION**

16      For the reasons stated above, Defendant Wilson's Motion to

17 Dismiss count two of the Amended Complaint for Plaintiff's failure

18 to exhaust administrative remedies is **GRANTED** without leave to

19 amend.  Goolsby's allegations against Wilson in count three are sua

20 sponte **DISMISSED** without leave to amend because they are based on

21 the same contentions asserted in count two.

22      Defendants Ridge and Martinez's Motion to Dismiss the Eighth

23 Amendment charges against them in count one for failing to

24 personally examine Goolsby and failing to prescribe the medications

25 Plaintiff preferred is **GRANTED** without leave to amend for failure

26 to state a claim.  Further, Ridge and Martinez's Motion to Dismiss

27 these two claims based on qualified immunity is **GRANTED** without

28 leave to amend.  Their Motion to Dismiss the claim alleging that

1  Ridge and Martinez failed to ensure that Goolsby underwent the

2  diagnostic tests ordered by treating physicians at county jail is

3  **GRANTED** with leave to amend.  Defendants' claim of qualified

4  immunity for this claim is premature.  Finally, Goolsby's request

5  for injunctive relief is moot and is **DENIED**.

6      Plaintiff is **GRANTED** forty-five (45) days leave from the date

7  this Order is filed in which to file a Second Amended Complaint

8  which cures all the deficiencies of pleading the claim in count one

9  against Drs. Ridge and Martinez that they failed to ensure that

10 Goolsby underwent the diagnostic tests ordered by physicians at

11 county jail as noted above.  Plaintiff's Second Amended Complaint

12 must be complete in itself without reference to his previous

13 pleading.  See S.D. Cal. Civ. L.R. 15.1.

14     **IT IS SO ORDERED.**

15

16 DATE: May 23, 2011                     _____

17                                        RUBEN B. BROOKS
                                          United States Magistrate Judge

18 cc:  Judge Hayes
        All Parties of Record

19

20

21

22

23

24

25

26

27

28