1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                     SOUTHERN DISTRICT OF CALIFORNIA

10

11   THOMAS GOOLSBY,                    )   Civil No. 09cv02654-RBB
                                        )
12                   Plaintiff,         )   **ORDER (1) GRANTING IN PART AND**
                                        )   **DENYING IN PART DEFENDANTS'**
13                                      )   **MOTION TO DISMISS PLAINTIFF'S**
     v.                                 )   **SECOND AMENDED COMPLAINT [ECF**
14                                      )   **NO. 29]; AND (2) DENYING**
                                        )   **PLAINTIFF'S MOTION FOR ORDER**
15   NEAL RIDGE, M.D.; M. MARTINEZ,     )   **ON DEFENDANTS MOTION TO**
     M.D.,                              )   **DISMISS AS MOOT [ECF NO. 38]**
16                                      )
                                        )
17                   Defendants.        )
     _____)

18

19       Plaintiff Thomas Goolsby, a state prisoner proceeding pro se

20   and in forma pauperis, filed a Complaint on November 23, 2009,

21   against Defendants Ridge, Martinez, Sanchez, and Wilson, pursuant

22   to 42 U.S.C. § 1983 [ECF Nos. 1, 4].  On March 24, 2010, Goolsby

23   filed an Amended Complaint against Defendants Ridge, Martinez, and

24   Wilson [ECF No. 5].

25       All three Defendants filed a Motion to Dismiss Plaintiff's

26   First Amended Complaint [ECF No. 13].  One day after this Court

27   issued its Report and Recommendation Granting Defendants' Motion to

28   Dismiss Plaintiff's First Amended Complaint, the parties sought to

                                   1

consent to magistrate judge jurisdiction [ECF No. 21].  The
district court subsequently referred the case to this Court for all
proceedings [ECF No. 22].  On May 23, 2011, the Court issued an
Order Granting Defendants' Motion to Dismiss Plaintiff's First
Amended Complaint [ECF No. 23], which superseded the Report and
Recommendation it issued on May 10, 2011.  (See Order Granting
Defs.' Mot. Dismiss Pl.'s First Am. Compl. 1, ECF No. 23.)  Goolsby
was only given leave to amend his claim that Defendants Ridge and
Martinez were deliberately indifferent to Plaintiff's serious
medical needs by failing to ensure that he received previously
ordered medical tests.  (Id. at 52-53.)  Goolsby's other claims
were dismissed without leave to amend.  (Id.)

     On June 13, 2011, Plaintiff filed a Second Amended Complaint
against Defendants Ridge and Martinez [ECF No. 25].[1]  The
Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint
was filed on June 23, 2011, along with a Memorandum of Points and
Authorities and the Declaration of L. D. Zamora [ECF No. 29].  The
Court then issued a Wyatt v. Terhune Notice advising Goolsby of
Defendants' Motion to Dismiss, in part, for failing to exhaust, and
giving him time to present any additional evidence demonstrating
exhaustion [ECF No. 30].  On July 11, 2011, Plaintiff filed an
Opposition to Motion to Dismiss with a Memorandum of Points and
Authorities [ECF No. 32].[2]  Defendants' Reply to Plaintiff's
Opposition was filed on July 18, 2011 [ECF No. 34].

---

     [1]  Because the Amended Complaint and the Second Amended
Complaint are not consecutively paginated, the Court will cite to
them using the page numbers assigned by the electronic case filing
system.

     [2]  The Court will also cite to Goolsby's Opposition using the
page numbers assigned by the Court's electronic filing system.

1    Also before the Court is Plaintiff's Motion for Order on
2  Defendants' Motion to Dismiss, which was filed nunc pro tunc to
3  February 29, 2012 [ECF No. 38].
4    The Court has considered Plaintiff's Second Amended Complaint,
5  Defendants' Motion to Dismiss and attachments, Goolsby's Opposition
6  and attachment, Defendants' Reply, and Plaintiff's Motion for
7  Order.  For the following reasons, Defendants Ridge and Martinez's
8  Motion to Dismiss is **GRANTED** in part and **DENIED** in part.
9  Plaintiff's Motion for Order on Defendants' Motion to Dismiss is
10 **DENIED** as moot.

11                     **I.   FACTUAL BACKGROUND**

12     Goolsby is currently housed at California Correctional
13 Institution in Tehachapi, California, but the allegations in the
14 Second Amended Complaint arise from events that occurred while he
15 was incarcerated at Richard J. Donovan Correctional Facility
16 ("Donovan") between December 16, 2008, and February 11, 2009.
17 (Second Am. Compl. 1, ECF No 25.)

18     The Plaintiff contends that he was transferred to Donovan from
19 San Diego County Jail on December 16, 2008.  (Id. at 3.)  While
20 housed at county jail, he was pushed down a flight of stairs; at
21 the time, he was in waist chains and leg shackles.  (Id. at 4.)
22 Although Goolsby had a prior right shoulder tear, it had healed
23 sufficiently that he could exercise with a good range of motion.
24 (Id.)  Doctors at county jail diagnosed Goolsby with a torn rotator
25 cuff in his right shoulder and sprained or strained back and neck
26 muscles as a result of the fall.  (Id.)  Plaintiff was given pain
27 medication and was referred to an orthopedic surgeon.  (Id.)  Soon
28 after, Goolsby was sent to the emergency room because he was

vomiting blood and had a bloody stool.  (Id.)  Tests were conducted
and Plaintiff was told that he had strictures, which are intestinal
cuts.  (Id.)  The county jail doctors then ordered an endoscopy and
colonoscopy to confirm the diagnosis and determine the extent of
the damage.  (Id.)

The Plaintiff contends that he was subsequently involved in an
altercation with his cellmate, during which Goolsby sustained
several bite wounds on his fingers; medical staff at county jail
treated him with "high power antibiotics" and monitored his bite
wounds.  (Id. at 5.)  Plaintiff alleges that he subsequently fell
directly on his back, neck, and head in his cell.  (Id.)  Once
again, Goolsby was sent to the emergency room where medical staff
determined that, although he did not break his back, his back
muscles were damaged.  (Id.)  The Plaintiff was given a neck brace
and a walker for the mobility impairment caused by the fall.  (Id.)

Goolsby maintains that on December 16, 2008, he arrived at
Donovan with all of these injuries.  (Id.)  He also brought with
him a neck brace, a walker, pain medication, muscle relaxants,
stomach medication, as well as orders from county jail physicians
for an MRI from the orthopedic surgeon, an endoscopy, and a
colonoscopy.  (Id.)  Upon his arrival at Donovan, Plaintiff
explained his injuries to the screening nurse and told her he
needed to see a physician as soon as possible.  (Id.)  The nurse
already had a list of the medical appliances, medications, and
tests that were ordered while Goolsby was in county jail.  (Id. at
5-6.)  The nurse reviewed the list in front of Goolsby and told
him, "'[Y]our not gonna get the M.R.I., and I doubt the endoscopy
and colonoscopy either . . . Dr. Ridge never orders M.R.I.'s

4

because they cost way too much.  Same with the endoscopy and colonoscopy[.]'"  (Id. at 6.)  Plaintiff alleges that he pleaded with her and told her the tests were "vital," and the nurse said, "I'll call [Dr. Ridge] but I'm telling you he's not gonna do it." (Id.)

The nurse is alleged to have telephoned Doctor Ridge and relayed Plaintiff's injuries to him; Defendant Ridge told the nurse that he would examine Goolsby within three days.  (Id.)  After the call, Plaintiff argues that he asked the nurse if there was a way to ensure that he receive the previously ordered medical tests. (Id.)  The nurse responded, "'It's impossable [sic], he's your treating physician, and ONLY the treating physician can order those tests.  There's no way around it.  He's the sole decision maker on how and when such tests could be ordered.'"  (Id.)  Plaintiff asserts that by December 19, 2008, he still had not been seen by Dr. Ridge and Goolsby's medication stopped, "which exasperated [sic] [his] back neck, and shoulder injuries."  (Id. at 7.)  The Plaintiff then filed a request for medical attention and "began to suffer."  (Id.)

On December 24, 2008, Nurse T. Sheriff came to Goolsby's cell in response to the request for medical attention.  (Id.)  Plaintiff argues that he complained to her that his medical condition was worsening, and he again requested that the medical tests be ordered.  (Id.)  Nurse Sheriff informed Goolsby that he should have been seen by Dr. Ridge, and she would call the doctor immediately. (Id.)  The nurse also stated that because the medical tests were not "endorsed" by Donovan staff, Dr. Ridge would likely ignore the request because of his high caseload; the doctor is known to ignore

inmates until they transferred.  (Id.)  Plaintiff submits that he
then observed Nurse Sheriff contact Ridge on the telephone and
inform the doctor of Goolsby's "severe medical needs."  (Id.)
Plaintiff asserts that Dr. Ridge drew the conclusion that failing
to treat Goolsby would cause severe pain and injury.  (Id.)  That
same day, Plaintiff's muscle relaxant stopped with no reason or
notice, causing Goolsby to be "virtually bed ridden."  (Id.)  As of
December 30, 2008, Plaintiff still had not been examined by Dr.
Ridge, and Goolsby was in "tremendous pain," so he filed another
request for medical attention.  (Id. at 8.)

    In "late December 2008," the Plaintiff was transferred to a
different housing unit in Donovan where Dr. Martinez was his new
treating physician.  (Id. at 8-9.)  Correctional Officer Wilson
allegedly told Plaintiff that only Goolsby's treating physician,
Dr. Martinez, could order the walker returned.  (Id. at 9.)

    The Plaintiff argues that he filed another request for medical
attention on January 5, 2009, "begging for a Dr. Martinez to see
[Plaintiff] . . . as that's the only way [Goolsby] could get the
tests ordered and walker [returned] . . . . ."  (Id.)  On January 12,
2009, Plaintiff asserts that he was seen by two nurses, McArthur
and Sanchez, who were appalled that Goolsby had not been examined
yet.  (Id.)  Plaintiff asked about the status of his medical tests
and walker, and one of the nurses stated that Dr. Martinez was the
only person who could order the medical tests, and Goolsby had to
see Dr. Martinez before he could order the tests.  (Id.)

    Plaintiff submits that Nurse Sanchez then telephoned Dr.
Martinez and informed the doctor of Plaintiff's "severe and
debilitating injuries."  (Id.)  She said that Goolsby would be seen

on the next doctor line (the list of inmates seen every week).
(Id. at 9-10.)  Plaintiff contends that Sanchez also said,
"'[D]on't count on the tests especially the MRI cause Dr. Martinez
told [Sanchez] they hardly ever order one due to budgetary
constraints.  Same with the endoscopy and colonoscopy.'"  (Id. at
10.)  Sanchez also told Goolsby that Dr. Martinez asked her if
Plaintiff was "'an endorsed inmate.'"  (Id.)  When Sanchez told Dr.
Martinez that Goolsby was not, Martinez stated, "'[L]et the prison
he's endorsed to deal with him.'"  (Id.)  Nonetheless, Nurse
Sanchez promised to put Goolsby in line for a doctor visit, and she
hoped the doctor would see Plaintiff.  (Id.)

     On January 11, 2009, Goolsby filed an "emergency (602) appeal"
against the prison medical staff for ignoring Plaintiff's requests
and refusing to examine him, order the medical tests and
appliances, and treat Plaintiff's serious medical needs.  (Id.)
Goolsby argues that on January 22, 2009, he observed Dr. Martinez
enter the "building."  (Id.)  Plaintiff wrote another inmate
grievance and gave it to Correctional Officer Gamble to hand to
Martinez.  (Id.)  In the grievance, Goolsby outlined his injuries
and his need for the medical tests and appliances ordered by county
jail medical staff.  (See id.)  Plaintiff watched Officer Gamble
hand the grievance to Dr. Martinez; the doctor read it and gave it
back to Gamble, who then brought it back to Goolsby.  (Id.)  Gamble
told Plaintiff that Dr. Martinez said to him, "'I know all about
Goolsby and his 602's, medical requests and complaints, but I don't
deal with whiners, he's not endorsed [at Donovan] and we don't do
MRIs cause they cost too much, give [the grievance] back to
[Goolsby].'"  (Id. at 10-11.)

Plaintiff alleges that later that morning, he asked a nurse if he was on the list to be seen by the doctor that day, and she said that he had been "scratched off by the doctor." (<u>Id.</u> at 11.) Goolsby was transferred from Donovan to California Correctional Institution in Tehachapi, California on February 11, 2009. (<u>Id.</u>)

In count one, the Plaintiff argues that Dr. Ridge was responsible for his medical care at Donovan. (<u>Id.</u> at 3.) Ridge improperly interfered with orders issued by the county jail doctors merely due to budget constraints and laziness. (<u>Id.</u> at 3, 8.) Goolsby asserts that because he was not "endorsed" to Donovan and Dr. Ridge had a heavy caseload, the doctor ignored Plaintiff's medical needs, hoping that Goolsby would go away. (<u>Id.</u> at 3.) Dr. Ridge ignored the Plaintiff even though two different nurses called the doctor to notify him of Goolsby's serious and degenerating condition, and Plaintiff submitted two different medical requests. (<u>Id.</u> at 8.) The Plaintiff argues that interfering with a previous doctor's orders for monetary and caseload reasons amounts to deliberate indifference of his serious medical needs, in a violation of the Eighth Amendment. (<u>Id.</u>)

In count two, Goolsby asserts Dr. Martinez was responsible for his medical care at Donovan. (<u>Id.</u> at 3.) Plaintiff alleges that Dr. Martinez was aware of Goolsby's serious medical needs because Plaintiff submitted numerous medical requests and also observed Nurse Sanchez telephone the doctor. (<u>Id.</u> at 11.) Defendant Martinez interfered with the orders from county jail doctors for medical tests for budgetary and caseload reasons. (<u>Id.</u>) Plaintiff also argues that Martinez refused to see him; consequently, Plaintiff could not get his walker back, in violation of Goolsby's

1  constitutional rights.  (Id.)  "Dr. Martinez was the sole person

2  who could control when and how such test[s] and medical appliances

3  were given."  (Id.)

4      In count three of the Second Amended Complaint, Goolsby

5  alleges that Dr. Martinez retaliated against Plaintiff for filing

6  requests for medical attention as well as inmate grievances by

7  "scratching [Plaintiff] off the [doctor] line so [Goolsby] could

8  not receive the medical care [he] so desperately needed."  (Id. at

9  12.)  According to Goolsby, this chilled his First and Eighth

10  Amendment rights, and Dr. Martinez had no legitimate correctional

11  goal.  (Id.)

12              **II.   APPLICABLE LEGAL STANDARDS**

13  **A.   Motions to Dismiss for Failure to State a Claim**

14      A motion to dismiss for failure to state a claim pursuant to

15  Federal Rule of Civil Procedure 12(b)(6) tests the legal

16  sufficiency of the claims in the complaint.  See Davis v. Monroe

17  County Bd. of Educ., 526 U.S. 629, 633 (1999).  "The old formula --

18  that the complaint must not be dismissed unless it is beyond doubt

19  without merit -- was discarded by the Bell Atlantic decision [Bell

20  Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007)]."  Limestone

21  Dev. Corp. v. Vill. of Lemont, 520 F.3d 797, 803 (7th Cir. 2008).

22  A complaint must be dismissed if it does not contain "enough facts

23  to state a claim to relief that is plausible on its face."  Bell

24  Atl. Corp., 550 U.S. at 570.  "A claim has facial plausibility when

25  the plaintiff pleads factual content that allows the court to draw

26  the reasonable inference that the defendant is liable for the

27  misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, ___, 129 S.

28  Ct. 1937, 1949 (2009).  This Court must accept as true all material

9

factual allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to the plaintiff.  Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004) (citing Karam v. City of Burbank, 352 F.3d 1188, 1192 (9th Cir. 2003)); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).

The court does not look at whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence to support the asserted claims.  Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 184 (2005) (quotation omitted); see Bell Atl. Corp., 550 U.S. at 563 n.8.  A dismissal under Federal Rule of Civil Procedure 12(b)(6) is generally proper only where there "is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001) (citing Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)).

The court need not accept conclusory allegations in the complaint as true; rather, it must "examine whether [they] follow from the description of facts as alleged by the plaintiff."  Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted); see Halkin v. VeriFone, Inc., 11 F.3d 865, 868 (9th Cir. 1993); see also Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994) ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

1  inferences."  <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988
2  (9th Cir. 2001).

3       In addition, when resolving a motion to dismiss for failure to
4  state a claim, the court generally may not consider materials
5  outside of the pleadings.  <u>Schneider v. Cal. Dep't of Corr.</u>, 151
6  F.3d 1194, 1197 n.1 (9th Cir. 1998); <u>Jacobellis v. State Farm Fire</u>
7  <u>& Cas. Co.</u>, 120 F.3d 171, 172 (9th Cir. 1997); <u>Allarcom Pay</u>
8  <u>Television Ltd. v. Gen. Instrument Corp.</u>, 69 F.3d 381, 385 (9th
9  Cir. 1995).  "The focus of any Rule 12(b)(6) dismissal . . . is the
10 complaint."  <u>Schneider</u>, 151 F.3d at 1197 n.1.  This precludes
11 consideration of "new" allegations that may be raised in a
12 plaintiff's opposition to a motion to dismiss brought pursuant to
13 Rule 12(b)(6).  <u>Id.</u> (citations omitted).

14      "When a plaintiff has attached various exhibits to the
15 complaint, those exhibits may be considered in determining whether
16 dismissal [i]s proper . . . ."  <u>Parks Sch. of Bus.</u>, 51 F.3d at 1484
17 (citation omitted).  The court may also consider documents "'whose
18 contents are alleged in a complaint and whose authenticity no party
19 questions, but which are not physically attached to the
20 [plaintiff's] pleading.'"  <u>Sunrize Staging, Inc. v. Ovation Dev.</u>
21 <u>Corp.</u>, 241 F. App'x 363, 365 (9th Cir. 2007) (quoting <u>Janas v.</u>
22 <u>McCracken (In re Silicon Graphics Inc. Sec. Litig.)</u>, 183 F.3d 970,
23 986 (9th Cir. 1999)) (alterations in original); <u>Stone v. Writer's</u>
24 <u>Guild of Am. W., Inc.</u>, 101 F.3d 1312, 1313-14 (9th Cir. 1996).

25 **B.   <u>Standards Applicable to Pro Se Litigants</u>**

26      Where a plaintiff appears in propria persona in a civil rights
27 case, the court must construe the pleadings liberally and afford
28 the plaintiff any benefit of the doubt.  <u>Karim-Panahi v. Los</u>

Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988).  The rule
of liberal construction is "particularly important in civil rights
cases."  Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992).
In giving liberal interpretation to a pro se civil rights
complaint, courts may not "supply essential elements of claims that
were not initially pled."  Ivey v. Bd. of Regents of the Univ. of
Alaska, 673 F.2d 266, 268 (9th Cir. 1982).  "Vague and conclusory
allegations of official participation in civil rights violations
are not sufficient to withstand a motion to dismiss."  Id.; see
also Jones v. Cmty. Redev. Agency, 733 F.2d 646, 649 (9th Cir.
1984) (finding conclusory allegations unsupported by facts
insufficient to state a claim under § 1983).  "The plaintiff must
allege with at least some degree of particularity overt acts which
defendants engaged in that support the plaintiff's claim."  Jones
v. Cmty. Redev. Agency, 733 F.2d at 649 (internal quotation
omitted).

Nevertheless, the court must give a pro se litigant leave to
amend his complaint "unless it determines that the pleading could
not possibly be cured by the allegation of other facts."  Lopez v.
Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (quotation marks and
citations omitted).  Thus, before a pro se civil rights complaint
may be dismissed, the court must provide the plaintiff with a
statement of the complaint's deficiencies.  Karim-Panahi, 839 F.2d
at 623-24.  But where amendment of a pro se litigant's complaint
would be futile, denial of leave to amend is appropriate.  See
James v. Giles, 221 F.3d 1074, 1077 (9th Cir. 2000).

09cv02654-RBB

**C.    Stating a Claim Under 42 U.S.C. § 1983**

To state a claim under § 1983, the plaintiff must allege facts sufficient to show (1) a person acting "under color of state law" committed the conduct at issue, and (2) the conduct deprived the plaintiff of some right, privilege, or immunity protected by the Constitution or laws of the United States.  42 U.S.C.A. § 1983 (West 2003); Shah v. County of Los Angeles, 797 F.2d 743, 746 (9th Cir. 1986).

These guidelines apply to Defendants' Motion to Dismiss.

### III.   DEFENDANTS' MOTION TO DISMISS

Doctors Ridge and Martinez move to dismiss Plaintiff's Second Amended Complaint in its entirety.  (Defs.' Notice Mot. Dismiss 1, ECF No. 29.)  Dr. Martinez argues that Goolsby did not exhaust the walker or retaliation claims against him.  (Id. Attach. #1 Mem. P. & A. 8.)  Both Ridge and Martinez contend that Plaintiff fails to state an Eighth Amendment claim against them, that they are entitled to qualified immunity, and that Goolsby fails to state a claim for injunctive relief.  (Id. at 11-16.)

**A.    New Claims Alleged Against Defendant Martinez**

Under Federal Rule of Civil Procedure 15, a party may amend its pleading once as a matter of course.  Fed. R. Civ. P. 15(a).  Thereafter, a party must seek leave of court or obtain written permission from the opposing party to amend again.  Fed. R. Civ. P. 15(a)(2).  Here, all of Goolsby's causes of action alleged in the First Amended Complaint were dismissed.  (Order Granting Defs.' Mot. Dismiss Pl.'s First Am. Compl. 52-53, ECF No. 23.)  The Court only granted Plaintiff leave to amend his claim concerning Defendants Ridge and Martinez's failure to ensure that the

previously ordered medical tests were performed.  (<u>Id.</u>)  Each of
Goolsby's other claims was dismissed without leave to amend, and he
was not given leave to add new causes of action.  (<u>See</u> <u>id.</u>)

In a footnote, Dr. Martinez complains that Plaintiff added two
new accusations relating to Defendant's retaliation and his failure
to order Goolsby's walker returned without properly seeking leave
of court.  (Mot. Dismiss Attach. #1 Mem. P. & A. 8 n.3, ECF No.
29.)  Even so, Defendant Martinez argues at length that Goolsby
failed to exhaust either assertion.  (<u>Id.</u> at 8.)  The Plaintiff
insists that he properly exhausted these claims, but he does not
address whether the causes of action were properly added to the
Second Amended Complaint.  (<u>See</u> Opp'n Attach. #1 Mem. P. & A. 5-6,
ECF No. 32.)

Goolsby's walker claim was alleged in the First Amended
Complaint and was dismissed.  (Am. Compl. 11, ECF No. 5 (asserting
that Defendant Martinez was deliberately indifferent to Plaintiff's
serious medical needs because Dr. Martinez should have ordered
Goolsby's walker returned to him).)  For this reason, the Court
finds that Plaintiff's walker claim was not properly included in
the Second Amended Complaint.  This is in contrast to the
retaliation claim.  There were no facts in the First Amended
Complaint that could give rise to that retaliation cause of action.
To that extent, Plaintiff also has alleged a new claim for
retaliation without leave of court under Federal Rule of Civil
Procedure 15(a).

"Although an amendment filed without leave of court, when
leave is required, has no legal effect, the court has discretion to
treat the amendment as properly filed if the court would have

granted leave to amend had leave been sought." <u>Taylor v. City of</u>
<u>San Bernardino</u>, No. EDCV 09-240-MMM (MAN), 2010 U.S. Dist. LEXIS
140060, at *19 (C.D. Cal. Oct. 12, 2010) (citing <u>Ritzer v.</u>
<u>Gerovicap Pharm. Corp.</u>, 162 F.R.D. 642, 644-45 (D. Nev. 1995);
<u>Brockmeier v. Solano Cnty. Sheriff's Dep't</u>, No. CIV S-05-2090 MCE
EFB PS, 2007 U.S. Dist. LEXIS 40580, at *1 (E.D. Cal. May 21,
2007)).   Indeed, the Ninth Circuit has "repeatedly stressed that
the court must remain guided by 'the underlying purpose of Rule 15
. . . to facilitate decision on the merits, rather than on the
pleadings or technicalities.'" <u>Lopez</u>, 203 F.3d at 1127 (citation
omitted).   Whether to give leave to amend rests in the sound
discretion of the district court.   <u>Pisciotta v. Teledyne Indus.,</u>
<u>Inc.</u>, 91 F.3d 1326, 1331 (9th Cir. 1996).

Courts typically consider the following five factors when
determining the propriety of granting leave to amend:  (1) bad
faith by the moving party; (2) undue delay in seeking leave to
amend; (3) prejudice to the opposing party; (4) futility of
amendment; and (5) whether the plaintiff has previously amended the
complaint.  <u>Johnson v. Buckley</u>, 356 F.3d 1067, 1077 (9th Cir.
2004).   "Prejudice to the opposing party is the most important
factor."  <u>Jackson v. Bank of Haw.</u>, 902 F.2d 1385, 1387 (9th Cir.
1996) (citing <u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u>, 401
U.S. 321, 330-31 (1971)).   Whether leave to amend should be granted
"is not dependent on whether the amendment will add causes of
action or parties."  <u>DCD Programs, Ltd. v. Leighton</u>, 833 F.2d 183,
186 (9th Cir. 1987).

Although Goolsby has not properly sought leave to amend his
pleading to add a retaliation claim against Dr. Martinez, the Court

1  will consider the cause of action if the Court would have granted
2  Plaintiff leave to amend.  See Taylor, 2010 U.S. Dist. LEXIS
3  140060, at *19.  Likewise, even if Goolsby's walker claim should
4  not have been included in the Second Amended Complaint, the Court
5  will consider the claim if a motion for leave to amend would have
6  been granted.  See id.  Here, there is no evidence of bad faith or
7  undue delay as to either claim.  See Johnson, 356 F.3d at 1077.
8  The Plaintiff accused Martinez of failing to reissue a walker in
9  the First Amended Complaint, and Goolsby submits that he learned of
10 Dr. Martinez's retaliatory conduct only recently.  (See Opp'n
11 Attach. #1 Mem. P. & A. 6, ECF No. 32.)  Further, although
12 Plaintiff has amended his pleading twice, adding these two claims
13 will not substantially prejudice the Defendants.  See Johnson, 356
14 F.3d at 1077.  The claims, as alleged, may not have been exhausted.
15 Nevertheless, based on these factors, Plaintiff's walker and
16 retaliation claims against Dr. Martinez in the Second Amended
17 Complaint will be treated as properly asserted.

18 **B.**   **Exhaustion**

19       **1.   Motion to Dismiss Unexhausted Claims Pursuant to the**
             **Unenumerated Portions of Rule 12(b)**
20

21       Title 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act
22 ("PLRA") states:  "No action shall be brought with respect to
23 prison conditions under . . . 42 U.S.C. 1983 . . . or any other
24 Federal law, by a prisoner confined in any jail, prison, or other
25 correctional facility until such administrative remedies as are
26 available are exhausted."  42 U.S.C.A. § 1997e(a) (West 2003).  The
27 exhaustion requirement applies regardless of the relief sought.
28

Booth v. Churner, 532 U.S. 731, 741 (2001) (footnote and citation omitted).

"'[A]n action is "brought" for purposes of § 1997e(a) when the complaint is tendered to the district clerk[]' . . . ." Vaden v. Summerhill, 449 F.3d 1047, 1050 (9th Cir. 2006) (quoting Ford v. Johnson, 362 F.3d 395, 400 (7th Cir. 2004)). Therefore, prisoners must "exhaust administrative remedies before submitting any papers to the federal courts." Id. at 1048 (emphasis added).

Section 1997e(a)'s exhaustion requirement creates an affirmative defense. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). "[D]efendants have the burden of raising and proving the absence of exhaustion." Id. (footnote omitted). Defendants in § 1983 actions properly raise the affirmative defense of failure to exhaust administrative remedies through an unenumerated motion to dismiss under Federal Rule of Civil Procedure 12(b). Id. (citations omitted).

Unlike motions to dismiss for failure to state a claim upon which relief may be granted, "[i]n deciding a motion to dismiss for failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." Id. at 1119-20 (citing Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988)) (footnote omitted). Courts have discretion regarding the method they use to resolve factual disputes. Ritza, 837 F.2d at 369 (citations omitted). "A court ruling on a motion to dismiss also may take judicial notice of 'matters of public record.'" Hazleton v. Alameida, 358 F. Supp. 2d 926, 928 (C.D. Cal. 2005) (citing Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (citations omitted)). But "if the

district court looks beyond the pleadings to a factual record in deciding the motion to dismiss for failure to exhaust[,] . . . the court must assure that [the plaintiff] has fair notice of his opportunity to develop a record." Wyatt, 315 F.3d at 1120 n.14.

"[When] the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice." Id. at 1120 (citing Ritza, 837 F.2d at 368 n.3).

### 2.  The Administrative Grievance Process

"The California Department of Corrections ['CDC'] provides a four-step grievance process for prisoners who seek review of an administrative decision or perceived mistreatment:  an informal level, a first formal level, a second formal level, and the Director's level." Vaden, 449 F.3d at 1048-49 (citing Brown v. Valoff, 422 F.3d 926, 929-30 (9th Cir. 2005)).  The administrative appeal system can be found in title 15, sections 3084.1, 3084.5, and 3084.6 of the California Code of Regulations ("CCR").[3]  See Brown, 422 F.3d at 929-30 (citing Cal. Code Regs. tit. 15, §§ 3084.1(a), 3084.5(a)-(b), (e)(1)-(2), 3084.6(c) (amended 2011)).  To comply with the CDC's administrative grievance procedure, a prisoner must submit the grievance at the informal level "within 15 working days of the event or decision being appealed . . . ."  Cal.

---

[3]   The regulations that govern the prison administrative grievance process were amended on December 17, 2010, effective January 28, 2011.  See Cal. Code Regs. tit. 15, §§ 3084-3084.8 (amended 2011).  The events surrounding Goolsby's claims and the submission of his grievances occurred prior to the amendment.  (See Second Am. Compl. 1, 10, ECF No. 25.)  Accordingly, the Court will apply the regulations in effect at the time those events occurred. Cal. Code Regs. tit. 15, §§ 3084-3084.8 (2010) (current version at Cal. Code Regs. tit. 15, §§ 3084-3084.8 (2011)); see also Jones v. Washington, No. C09-3003 CW, 2011 U.S. Dist. LEXIS 108606, at *7 n.2 (N.D. Cal. Sept. 23, 2011).

Code Regs. tit. 15, § 3084.6(c) (2010); see also Brown, 422 F.3d at
929.  A prisoner must proceed through all levels of the
administrative process prior to initiating a § 1983 action in
federal court.  See Vaden, 449 F.3d at 1051.

An inmate's grievances must be "sufficient under the
circumstances to put the prison on notice of the potential claims
and to fulfill the basic purposes of the exhaustion requirement."
Irvin v. Zamora, 161 F. Supp. 2d 1125, 1135 (S.D. Cal. 2001).
Exhaustion serves several important purposes, including "allowing a
prison to address complaints about the program it administers
before being subjected to suit, reducing litigation to the extent
complaints are satisfactorily resolved, and improving litigation
that does occur by leading to the preparation of a useful record."
Jones v. Bock, 549 U.S. 199, 219 (2007) (citing Woodford v. Ngo,
548 U.S. 81, 88-91 (2006), Porter v. Nussle, 534 U.S. 516, 524
(2002)).

**3. Goolsby's Failure to Exhaust Claims Against Dr. Martinez**

In his Motion to Dismiss, Defendant Martinez asserts that
Plaintiff failed to exhaust his claims that the doctor refused to
order Goolsby's walker returned to Plaintiff and retaliated against
him.  (Mot. Dismiss Attach. #1 Mem. P. & A. 8, ECF No. 29.)
Martinez maintains that Goolsby filed only one inmate grievance
while incarcerated at Donovan, and it reads as follows:

**A. Describe Problem:**  On December 16th 2008 I arrived at
Richard J. Donovan from downtown county jail with a
bruised neck, damaged lower back, a torn rotator cuff and
gastronomical issues.  For those debilitating medical
ailments, I was prescribed Metamucil, Prilosec, Morphine,
[Dicyclomine], Neurotin, and [Flexeril]!  To date I've
yet to see a doctor and all my medication has been
stopped except for Prilosec and a fiber pill.  I'm in
excruciating pain, and all my requests for medical

19

1    attention has been ignored.  I've submitted 3 medical
2    requests without response.

     **B.  Action Requested**:  To be evaluated by a licensed
3    doctor as per Title 15 upon new appeal.  I'm being
     subjected to cruel and unusual punishment.
4

5    (Id. (citing id. Attach. #2 Decl. Zamora Ex. A, at 1).)

6        The Defendant urges that this grievance did not, even

7    indirectly, address Plaintiff's walker or retaliation claims

8    against Dr. Martinez.  (Id.)  "Not only did Plaintiff not mention

9    these issues where he initially described the problem, he also

10   failed to mention them in subsequent requests for higher-level

11   reviews."  (Id.)  Martinez urges that Goolsby did not file any

12   other grievance relating to medical treatment during his

13   incarceration at Donovan that was "received and exhausted at the

14   third level of review."  (Id.)  According to the Defendant, the

15   Court should dismiss Plaintiff's walker and retaliation causes of

16   action for failure to exhaust.  (Id.)

17            **a.   Failure to order Plaintiff's walker returned**

18       In his Opposition, Goolsby argues that Dr. Martinez's failure

19   to examine Plaintiff precluded him from getting his walker back.

20   (Opp'n Attach. #1 Mem. P. & A. 6, ECF No. 32.)  After the

21   correctional officer confiscated Goolsby's medical appliance, the

22   only way to retrieve it was for Dr. Martinez to examine Plaintiff

23   and then order a walker for him.  (See Second Am. Compl. 9, ECF No.

24   25.)  Because Defendant's refusal to examine Goolsby effectively

25   denied him his walker, Plaintiff asserts that he has exhausted his

26   walker claim against Martinez.  (See id.)

27       Dr. Martinez responds that even though Plaintiff's grievance

28   states that he had not been examined, it would not alert the

                                   20

institution that Goolsby was asserting that he needed a walker.
(Reply 4, ECF No. 34.)  Defendant maintains that Plaintiff has
conceded that this grievance is the only one he submitted.  (Id.)

The level of detail required for an administrative grievance
to properly exhaust a claim is determined by the prison's
applicable grievance procedures.  Bock, 549 U.S. at 218.  At the
time Goolsby submitted his grievance, California regulations
required inmates to "describe the problem and action requested."
Cal. Code Regs. tit. 15, § 3084.2(a) (2010).  "[W]hen a prison's
grievance procedures are silent or incomplete as to factual
specificity, 'a grievance suffices if it alerts the prison to the
nature of the wrong for which redress is sought.'"  Griffin v.
Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (quotation omitted).

For the reasons discussed below, Plaintiff's claim that Dr.
Martinez was deliberately indifferent for failing to reissue a
walker to Goolsby fails.  First, to the extent the Plaintiff
asserts a distinct claim that his Eighth Amendment rights were
violated because he was deprived of his walker for a period of
time, this claim is unexhausted.  Second, to the extent Goolsby
alleges that Dr. Martinez is liable for failing to examine
Plaintiff so that the doctor could reissue a walker, this
contention fails on the merits because it was already dismissed
without leave to amend.

### i.  Deprivation of a medical appliance

If Goolsby's contention constitutes a distinct deprivation-of-
walker claim, it is unexhausted.  Indeed, an inmate grievance "need
not contain every fact necessary to prove each element of an
eventual claim," but the appeal must serve its purpose, which is to

21

alert the prison of a specific problem.  Id.  This Court previously
found that Goolsby had not exhausted his claim against former
defendant, Correctional Officer Wilson, for improperly taking
Plaintiff's walker.  (Order Granting Defs.' Mot. Dismiss First Am.
Compl. 16-17, ECF No. 23.)  The grievance lodged by Goolsby -- the
same one at issue here -- did not put the prison on notice of a
walker allegation against Wilson because it did not mention a
walker, state that Wilson took it, or request any relief regarding
a walker.  (Id. at 15-17.)  The Court determined that because the
grievance did not mention Wilson or the walker, "Goolsby did not
make clear that his request to be 'evaluated by a licensed doctor'
was related to Correctional Officer Wilson's taking of Plaintiff's
walker."  (Id.)

     Similarly, Plaintiff's grievance does not put the prison on
notice of a claim that Dr. Martinez is liable for failing to
reissue a walker to Goolsby.  Even under the "relaxed standards"
for exhaustion adopted by some courts, Plaintiff's grievance did
not present the "relevant factual circumstances giving rise to a
potential claim" against Dr. Martinez regarding the reissuance of a
confiscated medical appliance.  See Irvin, 161 F. Supp. 2d at 1134;
see also Roman v. Knowles, No. 07cv1343-JLS-POR, 2011 U.S. Dist.
LEXIS 95410, at *32-33 (S.D. Cal. June 20, 2011) (citing Gomez v.
Winslow, 177 F. Supp. 2d 977, 983 (N.D. Cal. 2001)).  The grievance
complains that Plaintiff's medications were stopped and that
Goolsby sought to be "examined by a licensed doctor."  (Mot.
Dismiss Attach. #2 Decl. Zamora Ex. A, at 1, ECF No. 29.)  In his
first and second level appeals, Goolsby complains that a physician
never examined him and that he still has not received the

diagnostic tests ordered by county jail physicians.  (See id. at 6-8.)

None of the appeals mentioned the deprivation of Plaintiff's walker.  See Saethong v. Yates, No. 1:08-cv-01126-AWI-GSA PC, 2009 U.S. Dist. LEXIS 63257, at *8 (E.D. Cal. July 23, 2009).  Goolsby's walker claim is not an aspect of the inadequate medical treatment Plaintiff grieved, which was for failing to be examined, to receive diagnostic tests, and to be prescribed pain medication.  Cf. Meharie v. Cox, No. S-08-1089 MCE DAD P, 2009 U.S. Dist. LEXIS 42207 (E.D. Cal. May 19, 2009) (explaining that inmates need not exhaust a separate grievance each time they receive inadequate care for one "ongoing condition"); Gomez, 177 F. Supp. 2d at 982-83 (noting that allegations that defendants failed to inform plaintiff that he had hepatitis C, failed to begin treatment for several years, or provide plaintiff with information were "encompassed within" the claim of inadequate medical care because all of the assertions related to the treatment plaintiff received for his hepatitis).  Goolsby's claim that he no longer had his walker and needed Dr. Martinez to see him to reissue one back is not "encompassed" within his grieved allegation of inadequate medical care.  Cf. Hampton v. Sahota, No. CIV S-06-0966 DFL DAD P, 2007 U.S. Dist. LEXIS 35409, at *21 (E.D. Cal. May 15, 2007) (finding that plaintiff's cause of action was encompassed in his grievance because plaintiff continuously grieved that he received inadequate post-thyroidectomy follow-up care).

Without mentioning that his walker was improperly taken and that Goolsby was requesting it, prison officials could not be on notice that Plaintiff was seeking to have his walker returned to

him or reissued.  See Saethong, 2009 U.S. Dist. LEXIS 63257, at

*10-11 ("When, as here, an administrative petition does not

disclose an inmate's unspoken objective, prison officials are

unlikely to guess the objective and resolve or even address it.").

The separate and distinct deprivation-of-walker allegation is not

analogous to allegations in Gomez, which discussed "one medical

condition allegedly ignored in a myriad of ways."  See Ellington v.

Dir. Corr., No. 2:09-cv-2985 MCE KJN P, 2010 U.S. Dist. LEXIS

57007, at *6 (E.D. Cal. June 8, 2010).  To the extent Goolsby

alleges that his rights were violated because he was deprived

access to a medical appliance for a period of time, the claim is

unexhausted.

     The Plaintiff need not be given leave to amend this claim if

it is too late to properly exhaust his administrative remedies.

See Pough v. Grannis, No. 08cv1498-JM(RBB), 2010 U.S. Dist. LEXIS

32514, at *23 (S.D. Cal. Jan. 6, 2010).  Goolsby did not submit an

inmate grievance against Dr. Martinez within fifteen working days

of the action being challenged, and any attempt to file one now

would be untimely.  See Cal. Code Regs. tit. 15, § 3084.6(c).

     Exceptions to the exhaustion requirement are limited.  See

Booth v. Churner, 532 U.S. at 741.  In Booth, the Supreme Court

explained, "Thus, we think that Congress has mandated exhaustion

clearly enough, regardless of the relief offered through

administrative procedures."  Id. (citing McCarthy v. Madigan, 503

U.S. 140, 144 (1992)) (footnote omitted).  "'Where Congress

specifically mandates, exhaustion is required[.]'"  Id. (quoting

McCarthy, 503 U.S. at 144).

1    Goolsby's interaction with Dr. Martinez occurred between late
2    December 2008 and February 11, 2009, which is more than three years
3    ago.  (Second Am. Compl. 9, 11, ECF No. 25.)  It is too late for
4    Plaintiff to exhaust his administrative remedies against Martinez
5    for this claim, and there are no applicable exceptions to the
6    exhaustion requirement.  Consequently, as a separate cause of
7    action, Plaintiff's deprivation-of-walker-claim fails.

8                        **ii.  Failure to be examined**

9    Alternatively, if Goolsby's argument is that Dr. Martinez is
10   liable for failing to examine Plaintiff so that the doctor could
11   reissue the walker, the claim fails on the merits.  This Court
12   previously dismissed Plaintiff's causes of action concerning Dr.
13   Martinez's failure to examine Goolsby.  (See Order Granting Defs.'
14   Mot. Dismiss First Am. Compl. 43-44, 52, ECF No. 23 (reiterating
15   that Goolsby does not have a constitutional right to be personally
16   examined by Dr. Martinez while in prison).)  Although Plaintiff's
17   failure-to-examine claim against Dr. Martinez is encompassed by
18   Goolsby's administrative grievance and is therefore exhausted, the
19   claim was dismissed on its merits without leave to amend.  (Id. at
20   52.)

21   For all of these reasons, Goolsby's claim that Dr. Martinez
22   was deliberately indifferent for failing to order that Plaintiff's
23   walker be returned to him, whether interpreted as an independent
24   claim or as a realleged failure-to-examine claim, will be
25   dismissed.  Defendant Martinez's Motion to Dismiss this claim is
26   **GRANTED** without leave to amend.

27

28

                                  25

### b.   Retaliation

Defendant Martinez also argues that the grievance Goolsby submitted did not directly or indirectly address his claim that Defendant retaliated against Goolsby.  (Mot. Dismiss Attach. #1 Mem. P. & A. 8, ECF No. 29.)

In the Opposition, Plaintiff states that he put prison officials on notice of a retaliation claim when he alleged that Dr. Martinez's refusal to examine Goolsby was because of the medical request and grievance that he had submitted.  (See Opp'n Attach. #1 Mem. P. & A. 6, ECF No. 32.)  The Plaintiff alleges that this formed the basis of the retaliation allegation.  (See id.)  Goolsby asserts he did not specifically use the word "retaliation" in his grievance because at the time he submitted it, January 9, 2009, he did not know the reason Dr. Martinez refused to examine Plaintiff.  (Id.)  Therefore, Goolsby maintains, his claim that Defendant retaliated against him for submitting medical requests was exhausted by his grievance alleging that he was never examined by a physician.  (Id.)

In the Reply, Defendant argues that the grievance complaining about being examined by a physician would not put the institution on notice that Goolsby was contending that Dr. Martinez was retaliating against Plaintiff.  (Reply 4, ECF No. 34.)

When Goolsby appealed his grievance, he described his medical problems and his need for treatment, but requested only to be evaluated by a doctor.  (See Mot. Dismiss Attach. #2 Decl. Zamora Ex. A, at 1, ECF No. 29.)  Nowhere in the grievance or subsequent appeals did Plaintiff contend that his inadequate care was the result of retaliation.  (Id.)

26

1    Even if the Plaintiff was unaware that he was being retaliated

2 against at the time he submitted his initial grievance, Goolsby was

3 still required to include the allegation in his subsequent appeals,

4 or file another grievance, when he learned of the distinct claim of

5 retaliation.  See Roman, 2011 U.S. Dist. LEXIS 95410, at *28-29, 33

6 (finding that although plaintiff's initial grievance did not

7 mention retaliation, the retaliation claim was exhausted because

8 his subsequent appeal explicitly accused defendants of

9 intentionally placing him with an incompatible cellmate and sought

10 to prevent future acts of retaliation by the defendants).  Goolsby

11 did neither.  Plaintiff has therefore failed to complete the prison

12 administrative process with respect to his retaliation claim

13 against Dr. Martinez before initiating a lawsuit in federal court.

14 See Vaden, 449 F.3d at 1051; McKinney v. Carey, 311 F.3d 1198,

15 1199-1200 (9th Cir. 2002).

16    Martinez's Motion to Dismiss count three of the Second Amended

17 Complaint for retaliation is **GRANTED**.  Because it is too late for

18 Goolsby to properly exhaust his administrative remedies regarding

19 the retaliation claim, he is not given leave to amend this claim.

20 See Pough v. Grannis, 2010 U.S. Dist. LEXIS 32514, at *23.

21 **C.**   **Eighth Amendment Claim:  Failure to Ensure that Plaintiff**
     **Received Previously Ordered Medical Tests**

22

23    The Eighth Amendment requires that inmates have "ready access

24 to adequate medical care."  Hoptowit v. Ray, 682 F.2d 1237, 1253

25 (9th Cir. 1982).  Deliberate indifference to serious medical needs

26 violates the Eighth Amendment's prohibition of cruel and unusual

27 punishment.  Estelle v. Gamble, 429 U.S. 97, 103 (1976).  To state

28 a claim, a prisoner's allegations must satisfy two requirements,

one objective and the other subjective.  Jett v. Penner, 439 F.3d
1091, 1096 (9th Cir. 2006); Lopez, 203 F.3d at 1132-33 (quoting
Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir. 1995)).  The plaintiff
must first establish a "serious medical need" by showing that
"failure to treat a prisoner's condition could result in further
significant injury or the 'unnecessary and wanton infliction of
pain.'"  Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974
F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX
Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997)).  "Second,
the plaintiff must show the defendant's response to the need was
deliberately indifferent."  Id. (citing McGuckin, 974 F.2d at
1060).

**1.  Serious medical need**

With regard to the objective requirement, "[e]xamples of
serious medical needs include '[t]he existence of an injury that a
reasonable doctor or patient would find important and worthy of
comment or treatment; the presence of a medical condition that
significantly affects an individual's daily activities; or the
existence of chronic and substantial pain.'"  Lopez, 203 F.3d at
1131 (quoting McGuckin, 974 F.2d at 1059-60).

The Plaintiff pleads that as a result of his torn rotator
cuff, strained back and neck muscles, and strictures, he "had an
extremely painful time moving."  (Second Am. Compl. 4-5, ECF No.
25.)  Goolsby was treated with pain medications, given a neck brace
and walker, and had an MRI, endoscopy, and colonoscopy ordered to
further diagnose and treat the injuries.  (Id.)  The Plaintiff has
asserted that he suffered from substantial pain that affected his
daily activities and was worthy of treatment by a doctor while he

1  was in Dr. Ridge's and Dr. Martinez's care.  See Lopez, 203 F.3d at

2  1131.  Goolsby has therefore alleged the existence of a serious

3  medical need and has satisfied the objective requirement for an

4  Eighth Amendment violation as to both Defendants.

5      **2.  Deliberate indifference**

6      Under the subjective element, prison officials are

7  deliberately indifferent to a prisoner's serious medical needs when

8  they "'deny, delay or intentionally interfere with medical

9  treatment.'"  Linderman v. Vail, 59 F. App'x 180, 182-83 (9th Cir.

10  2003) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir.

11  2002)).  "[T]he official must be both aware of facts from which the

12  inference could be drawn that a substantial risk of serious harm

13  exists, and he must also draw the inference."  Farmer v. Brennan,

14  511 U.S. 825, 837 (1994).  Inadequate treatment due to medical

15  malpractice, negligence, or even gross negligence, does not rise to

16  the level of a constitutional violation.  See Wilson v. Seiter, 501

17  U.S. 294, 297 (1991) (quoting Estelle, 429 U.S. at 105-06); Toguchi

18  v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).  A defendant's acts

19  or omissions will not amount to a constitutional violation unless

20  there is reckless disregard of a risk of serious harm to the

21  prisoner.  Farmer, 511 U.S. at 836.  The official must have

22  "know[n] that [the] inmate[] face[d] a substantial risk of serious

23  harm and disregard[ed] that risk by failing to take reasonable

24  measures to abate it."  Id. at 847.

25      In their Motion to Dismiss, Ridge and Martinez assert that

26  Plaintiff admits that the Defendants were merely responsible for

27  Goolsby's medical care while he was "passing through" Donovan on

28  his way to a permanent prison assignment.  (Mot. Dismiss Attach. #1

Mem. P. & A. 11, ECF No. 29.)  They maintain that Plaintiff does not assert facts showing that Ridge or Martinez denied or interfered with Goolsby's receipt of medical tests; rather, Plaintiff alleges that the doctors delayed the tests by leaving them to doctors where Goolsby would be permanently housed.  (Id.)  According to Defendants, Goolsby has not alleged that Dr. Ridge's two-week delay, or Dr. Martinez's one and one-half-month delay, caused substantial harm.  (Id. at 12.)  Defendants cite to the prison's response to Plaintiff's grievance at the first level, which indicated that Goolsby was examined by Dr. Grimm on March 24, 2009, slightly more than one month after Plaintiff left Dr. Martinez's care.  (Id.)  Dr. Grimm determined that an MRI, an endoscopy, and a colonoscopy were not medically necessary.  (Id. (citing id. Attach. #2 Decl. Zamora 4; Second Am. Compl. 13, ECF No. 13).)  Defendants contend that the Court can consider this document when ruling on the Motion to Dismiss because Goolsby referenced it in the Second Amended Complaint.  (Id.)

The Defendants further maintain, "Regardless of the allegations that Drs. Ridge and Martinez did not send Plaintiff out for the tests because of budgetary and work-load concerns, Plaintiff cannot allege the decision to let the doctors at the prison where Plaintiff would be sent deal with the tests caused substantial harm."  (Id.)  Also, if the Defendants were subjectively aware of a risk of harm to Goolsby's health if the tests were not immediately performed, the county jail physicians would have had the tests performed immediately as opposed to recommending that they be performed.  (Id.)

In his Opposition, Goolsby insists he has adequately alleged that Defendants "denied and delayed tests previously ordered by county jail doctors, not in their 'medical opinion' but because of budgetary, and desire for a lighter case load reasons." (Opp'n Attach. #1 Mem. P. & A. 2-3, ECF No. 32.)  Plaintiff has argued that Dr. Ridge's actions caused Goolsby to "'suffer,'" and Dr. Martinez's conduct caused Plaintiff's "'deteriorating medical needs.'"  (Id. at 3.)  As a pro se litigant, Plaintiff claims that he should be held to a less stringent standard than a plaintiff who is represented by an attorney.  (Id.)

In the Reply, Defendants urge that the two phrases Plaintiff cites to are insufficient to state a claim. (Reply 2, ECF No. 34.) "These statements do not allege harm from having to wait a couple of weeks (Dr. Ridge) or a month and a half (Dr. Martinez), to be sent out for MRI, an endoscopy, and a colonoscopy." (Id.) Moreover, Ridge and Martinez argue that "Plaintiff's own exhibit" indicates that a nonparty doctor found that the requested tests were not necessary.  (Id.)  Additionally, Plaintiff's purported suffering related to the denial of medications, not the lack of diagnostic testing.  (Id.)  Ridge and Martinez reiterate that even if Plaintiff accuses them of delaying the tests due to budgetary concerns, Goolsby does not show that the doctors were deliberately indifferent.  (Id. (citing Farmer, 511 U.S. at 837-38).)

The Defendants recharacterize Goolsby's claim as one for a delay in treatment; they argue that because Plaintiff did not suffer harm as a result of the delay, he has not stated a claim for deliberate indifference.  Indeed, to establish a claim of deliberate indifference arising from a delay in treatment, a

31

plaintiff must show that the delay was harmful.  <u>See</u> <u>Berry v.</u>
<u>Bunnell</u>, 39 F.3d 1056, 1057 (9th Cir. 1994); <u>Wood v. Housewright</u>,
900 F.2d 1332, 1335 (9th Cir. 1990); <u>Hunt v. Dental Dep't</u>, 865 F.2d
198, 200 (9th Cir. 1989).  But Plaintiff's claim is that for
budgetary and other administrative reasons, Defendants Ridge and
Martinez failed to order medical tests previously ordered by
doctors at county jail.  (<u>See</u> Second Am. Compl. 9-11, ECF No. 25.)

        The Supreme Court has noted that "[a] medical decision" to not
order further diagnostic tests does not necessarily constitute
cruel and unusual punishment.  <u>Estelle</u>, 429 U.S. at 107.
Nonetheless, prison officials act with deliberate indifference when
they "intentionally interfer[e] with . . . treatment once
prescribed."  <u>Wakefield v. Thompson</u>, 177 F.3d 1160, 1165 (9th Cir.
1999) (quoting <u>Estelle</u>, 429 U.S. at 104-05).  A violation may be
found when an official deliberately ignores orders of the
prisoner's previous doctor for reasons not related to the inmate's
medical needs.  <u>Id.</u> (citing <u>Hamilton v. Endell</u>, 981 F.2d 1062,
1066-67 (9th Cir. 1992)).

        **a.   Defendant Ridge**

        In the Second Amended Complaint, Plaintiff contends that
before he was transferred from county jail to Donovan, physicians
at county jail had diagnosed him with a torn rotator cuff and
sprained or strained back and neck muscles.  (Second Am. Compl. 4,
ECF No. 25.)  The doctors gave Goolsby pain medication and referred
him to an orthopedic surgeon; soon after, Plaintiff was sent to the
emergency room for vomiting blood and a bloody stool.  (<u>Id.</u>)
Goolsby asserts the county jail physicians conducted tests,
determined that he had intestinal cuts, and ordered an endoscopy

and colonoscopy to confirm the diagnosis and determine the extent of damage.  (Id.)  Plaintiff also alleges that while in his cell, he fell on his back, neck, and head, for which he was sent to the emergency room, and medical staff found that his back muscles were damaged.  (Id. at 5.)  The county jail physicians also ordered an MRI from the orthopedic surgeon.  (Id.)

Goolsby maintains that when he arrived at Donovan, a screening nurse told him that he would not likely receive the medical tests ordered by county jail physicians; the nurse said that Dr. Ridge never orders these tests "because they cost way too much." (Id. at 6.)  The nurse telephoned Dr. Ridge, and he told her he would examine Plaintiff within three days; the nurse told Goolsby that as the treating physician, Dr. Ridge was the only one who could order the tests.  (Id.)  Plaintiff had not been seen by Dr. Ridge three days later, so he filed a request for medical attention and "began to suffer."  (Id. at 7.)

On December 24, 2008, Plaintiff told Nurse Sheriff that his condition was worsening, and he asked for the medical tests.  (Id.) The nurse told Goolsby that because he was not "endorsed" to Donovan, Dr. Ridge would likely ignore the request; Ridge was known to ignore inmates until they transferred due to his heavy caseload. (Id.)  Goolsby observed Nurse Sheriff telephone Dr. Ridge.  (Id.) As of December 30, 2008, Plaintiff was experiencing "tremendous pain" and still had not received the medical tests, so he filed another request for medical attention.  (Id. at 8.)  Goolsby's allegations satisfy the objective component of his claim.

Goolsby has pleaded that Dr. Ridge's decision to not order the MRI, colonoscopy, and endoscopy was based on budget concerns and

workload, instead of medical reasons.  See Goring v. Elyona, No. 96
C 4521, 1997 U.S. Dist. LEXIS 1464, at *7 (N.D. Ill. Feb. 13, 1997)
("Denial of necessary care for a serious medical condition because
of budgetary constraints may give rise to a colorable claim under
the Eighth Amendment."); see also Chance v. Armstrong, 143 F.3d
698, 703-04 (2d Cir. 1998) (finding that plaintiff alleged an
Eighth Amendment violation when the physicians' recommended course
of treatment was based on monetary incentives as opposed to medical
opinions); Jones v. Johnson, 781 F.2d 769, 771 (9th Cir. 1986).
This alleged ulterior motive, if proven true, would show that Dr.
Ridge had a culpable state of mind and that his decision to refrain
from ordering the tests was not derived from "sound medical
judgment."  Chance, 143 F.3d at 704 ("[E]ven if we think it highly
unlikely that [plaintiff] will be able to prove his allegations,
that fact does not justify dismissal for failure to state a
claim . . . .");  George v. Sonoma County Sheriff's Dep't, 2010 U.S.
Dist. LEXIS 111193, at *31-32 (N.D. Cal. Oct. 19, 2010)
("[E]vidence of an improper or ulterior motive can support a
conclusion that a defendant failed to exercise sound medical
judgment but instead acted with a culpable state of mind.").

Defendant Ridge was allegedly aware of the county jail
doctors' orders for medical tests as well as Plaintiff's repeated
requests to receive them.  The medical tests were purportedly
necessary to diagnose and treat Goolsby's injuries.  See Ancata v.
Prison Health Servs., Inc., 769 F.2d 700, 704 (11th Cir. 1985)
("[I]f necessary medical treatment has been delayed for non-medical
reasons, a case of deliberate indifference has been made out.").
Plaintiff submits that he experienced severe pain while waiting for

the tests and that Dr. Ridge had control over whether such tests were administered. See Parzck v. Prison Health Servs., Inc., 290 F. App'x 289, 291 (11th Cir. 2008) (concluding that plaintiff alleged deliberate indifference when prison medical staff failed to provide plaintiff with an orthopedic consultation on two occasions, even though another doctor had recommended it and prisoner was in pain).

Plaintiff has contended that Dr. Ridge pursued a course of treatment based on nonmedical reasons, which is sufficient to state a constitutional violation. See Chance, 143 F.3d at 704 ("Crucially, he has also alleged that Dr. Moore and Dr. Murphy recommended extraction not on the basis of their medical views, but because of monetary incentives."); Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (observing that a violation is established if plaintiff can prove the doctors chose to deny him a kidney transplant because of personal animosity and not medical judgment and that the delay in performing the transplant was medically unacceptable); Jones v. Johnson, 781 F.2d at 771 (finding that plaintiff stated a claim when defendants' only explanation for denying surgery was budgetary constraints, and plaintiff alleged a serious medical need, experiencing pain from his herniated condition).

Consequently, Defendant Ridge's Motion to Dismiss the Eighth Amendment cause of action against him in count one for failing to ensure that Goolsby received previously ordered diagnostic tests is **DENIED**.

1

### b. Defendant Martinez

2      In the Second Amended Complaint, Plaintiff maintains that on

3  January 12, 2009, while Dr. Martinez was Goolsby's treating

4  physician, Plaintiff asked Nurses McArthur and Sanchez about the

5  status of his medical tests.  (Second Am. Compl. 9, ECF No. 25.)

6  One of the nurses told Goolsby that Dr. Martinez was the only

7  person who could order the tests and that Plaintiff had to see Dr.

8  Martinez before the doctor would do so.  (Id.)  Nurse Sanchez then

9  telephoned Dr. Martinez and informed him of Goolsby's injuries.

10 (Id.)  Sanchez then advised Plaintiff not to "count on" receiving

11 the medical tests while in Martinez's care; the doctor told her

12 that they rarely order tests like MRIs, colonoscopies, or

13 endoscopies due to budgetary constraints.  (Id. at 10.)  Sanchez

14 told Goolsby that Dr. Martinez had asked whether Plaintiff was an

15 "endorsed inmate."  (Id.)  When the nurse told Dr. Martinez no, he

16 told Sanchez to allow Goolsby's assigned prison to "deal with"

17 Plaintiff.  (Id.)

18     The day before, Goolsby had filed a grievance against the

19 prison medical staff for ignoring his requests and for refusing to

20 order the medical tests.  (Id.)  On January 22, 2009, Plaintiff

21 wrote another grievance complaining about having not received the

22 tests and he gave it to Correctional Officer Gamble.  (Id.)

23 Goolsby watched Officer Gamble hand the grievance to Dr. Martinez;

24 the doctor read it and gave it back to Gamble, who brought it back

25 to Goolsby.  (Id.)  Gamble told Plaintiff that Dr. Martinez said,

26 "'I know all about Goolsby and his 602's, medical requests and

27 complaints, but I don't deal with whiners, he's not endorsed [to

28 Donovan] and we don't do MRIs cause they cost too much, give [the

grievance] back to [Goolsby].'"  (Id. at 10-11.)  The Plaintiff was transferred from Donovan to California Correctional Institution on February 11, 2009, three weeks later.  (Id. at 11.)

Similarly, the Plaintiff has stated an Eighth Amendment claim against Dr. Martinez for basing his treatment of a serious medical need on budgetary concerns instead of medical opinions.  Chance, 143 F.3d at 703-04; see Jones v. Johnson, 781 F.2d at 771 (9th Cir. 1986) ("Budgetary constraints . . . do not justify cruel and unusual punishment.").  If true, Plaintiff will have established that Dr. Martinez had a culpable state of mind and that his decision was not based on medical judgment.  Chance, 143 F.3d at 704; George, 2010 U.S. Dist. LEXIS 111193, at *31-32.  Plaintiff maintains that while treating him, Dr. Martinez was the only person during that time who could control when and how medical tests were administered, and Goolsby was in severe pain while waiting for the tests.  Substantial harm from the delay is not required because Plaintiff has asserted that the delay was caused by the doctor's decisions that were not derived from sound medical judgment.  See Chance, 143 F.3d at 704; Jackson, 90 F.3d at 332.  Finally, Plaintiff maintains that Dr. Martinez was advised of Goolsby's injuries and that medical tests were previously ordered to confirm diagnoses and determine the extent of his injuries.  See Ancata, 769 F.2d at 704.

Defendant Martinez's Motion to Dismiss the Eighth Amendment cause of action in count two for failing to ensure that Goolsby receive the medical tests ordered by physicians at the county jail is **DENIED**.

**D.    Qualified Immunity**

Finally, Defendants Ridge and Martinez contend that they are entitled to qualified immunity.  (Mot. Dismiss Attach. #1 Mem. P. & A. 15, ECF No. 29.)  They argue that the issue is whether a reasonable doctor would believe that an inmate had a right to have recommended tests done immediately instead of waiting until he arrived at his permanent prison assignment, even if the decision was based on budgetary and workload concerns.  (Id.)  Defendants state there was no apparent risk of substantial harm to Plaintiff in delaying the tests.  (Id.)  This right, they argue, was not clearly established when the events giving rise to this claim occurred, because federal courts had held that delay in treatment must cause the inmate substantial harm.  (Id. (citing Bowen v. Treiber, 492 F. Supp. 2d 1206, 1213 (E.D. Cal. 2006)).

In his Opposition, Goolsby insists that he has pleaded a constitutional violation of a right that was clearly established at the time of the purported misconduct.  (Opp'n Attach. #1 Mem. P. & A. 5, ECF No. 32.)  The Plaintiff argues that "the right to NOT have a previous doctors orders interfe[r]ed with" had been well established for at least twenty years.  (Id. (citing Johnson v. Karnes, 398 F.3d 868 (6th Cir. 2005); Brock v. Wright, 315 F.3d 158, 166 (2nd Cir. 2003); Hemming v. Gorczyk, 134 F.3d 104, 108 (2nd Cir. 1998); Chance, 143 F.3d at 702; Gill v. Mooney, 824 F.2d 192, 196 (2nd Cir. 1987).)

In their Reply, Defendants argue that "clearly establishing a general proposition is not enough."  (Reply 3, ECF No. 34.)  They maintain that none of the cases Plaintiff relies on would make it sufficiently clear that an intake inmate had a constitutional right

to have recommended medical tests done immediately. (Id. at 3-4
(citing Johnson, 398 F.3d at 871; Brock, 315 F.3d at 166; Hemming,
134 F.3d at 109; Chance, 143 F.3d at 702; Gill, 824 F.2d at
195-96).)

    "Qualified immunity shields federal and state officials from
money damages unless a plaintiff pleads facts showing (1) that the
official violated a statutory or constitutional right, and (2) that
the right was 'clearly established' at the time of the challenged
conduct." Ashcroft v. Al-Kidd, __ U.S. __, 131 S. Ct. 2074, 2080
(2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); see
also Hydrick v. Hunter, 449 F.3d 978, 992 (9th Cir. 2006).  This
immunity protects "all but the plainly incompetent or those who
knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341
(1986).

    When considering a claim for qualified immunity, courts engage
in a two-part inquiry:  Do the facts show that the defendant
violated a constitutional right, and was the right clearly
established at the time of the defendant's purported misconduct?
Delia v. City of Rialto, 621 F.3d 1069, 1074 (9th Cir. 2010)
(quoting Pearson v. Callahan, 555 U.S. 223, 232 (2009)).  A right
is clearly established if the contours of the right are so clear
that a reasonable official would understand his conduct was
unlawful in the situation he confronted.  Dunn v. Castro, 621 F.3d
1196, 1199-1200 (9th Cir. 2010) (citation omitted) (internal
quotation marks omitted).  This standard ensures that government
officials are on notice of the illegality of their conduct before
they are subjected to suit.  Hope v. Pelzer, 536 U.S. 730, 739
(2002) (citation omitted).  "This is not to say that an official

39

action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . ." Id.

"[L]ower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." Al-Kidd, __ U.S. at __, 131 S. Ct. at 2080; Pearson, 555 U.S. at 236; see also Delia, 621 F.3d at 1075 (citing Brooks v. Seattle, 599 F.3d 1018, 1022 n.7 (9th Cir. 2010); Bull v. City & County of San Francisco, 595 F.3d 964, 971 (9th Cir. 2010)). "If the Officers' actions do not amount to a constitutional violation, the violation was not clearly established, or their actions reflected a reasonable mistake about what the law requires, they are entitled to qualified immunity." Brooks, 599 F.3d at 1022 (citing Blankenhorn v. City of Orange, 485 F.3d 463, 471 (9th Cir. 2007)); see James v. Rowlands, 606 F.3d 646, 651 (9th Cir. 2010) (quoting Pearson, 555 U.S. at 232, 236).

Courts should generally attempt to resolve this threshold immunity question at the earliest possible stage in the litigation "before expending 'scarce judicial resources' to resolve difficult and novel questions of constitutional or statutory interpretation that will 'have no effect on the outcome of the case.'" Al-Kidd, __ U.S. at __, 131 S. Ct. at 2080 (quoting Pearson, 555 U.S. at 236-37); see also Crawford-El v. Britton, 523 U.S. 574, 598 (1998) (noting that the purpose of resolving immunity issues early is so that officials are not subjected to unnecessary discovery); Hunter v. Bryant, 502 U.S. 224, 227 (1991).

    **1.   Violation of a constitutional right**

A prisoner has a constitutional right to "ready access to adequate medical care." Hoptowit, 682 F.2d at 1253.  When

40

institutional officials are deliberately indifferent to an inmate's medical needs, the prisoner's Eighth Amendment right to be free from cruel and unusual punishment is violated.  Estelle, 429 U.S. at 103.

The Court has already found that Goolsby adequately alleged that Defendants Ridge and Martinez were deliberately indifferent to a serious medical need when they, for nonmedical reasons, failed to order medical tests previously ordered by doctors at county jail. The Plaintiff has asserted that the Defendants violated a constitutional right.

**2.   Whether the right was clearly established**

"Whether a right is clearly established turns on the 'objective legal reasonableness of the action, addressed in light of the legal rules that were clearly established at the time it was taken.'"  Clouthier v. County of Contra Costa, 591 F.3d 1232, 1241 (9th Cir. 2010) (quoting Pearson, 555 U.S. at ___, 129 S. Ct. at 822).  "This is 'a two-part inquiry:  (1) Was the law governing the state official's conduct clearly established?  (2) Under that law could a reasonable state official have believed his conduct was lawful?'"  Estate of Ford, 301 F.3d at 1050 (quoting Jeffers, 267 F.3d at 910).

First, the law governing the Defendants' conduct was clearly established.  "Whether the right is clearly established in a particular case is judged as of the date of the incident alleged, and is a pure question of law."  Phillips v. Hust, 338 F. Supp. 2d at 1162 (citing Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993)).  "[T]he right alleged to have been violated must not be so broadly defined as to 'convert the rule of qualified immunity

that our cases plainly establish into a rule of virtually
unqualified liability simply by alleging violation of extremely
abstract rights.'"  Cunningham v. Gates, 229 F.3d 1271, 1288 (9th
Cir. 2000) (quoting Anderson v. Creighton, 483 U.S. 635, 639
(1987)).  "On the other hand, . . . the right can not be so
narrowly construed so as to 'define away all potential claims.'"
Id. (quoting Kelley v. Borg, 60 F.3d 664, 667 (9th Cir. 1995)).

     In the context of qualified immunity, the Court determines
whether a right was clearly established by looking to "Supreme
Court and Ninth Circuit law existing at the time of the alleged
act."  Community House, Inc. v. Boise, 623 F.3d 945, 967 (9th Cir.
2010).  An inmate's right to adequate medical care has long been
recognized.  Farmer, 511 U.S. at 828-29; Estelle, 429 U.S. at
103-04; Hoptowit, 682 F.2d at 1253.  A prison official's deliberate
indifference to an inmate's serious medical needs constitutes the
unnecessary and wanton infliction of pain prohibited by the Eighth
Amendment.  Helling, 509 U.S. at 32; Estelle, 429 U.S. at 104;
McGuckin, 974 F.2d at 1059.  Deliberate indifference may be
manifested by the intentional interference "with the treatment once
prescribed."  Estelle, 429 U.S. at 104-05; Wakefield, 177 F.3d at
1165.  A constitutional violation may be found when an official
deliberately ignores orders of the prisoner's previous doctor for
reasons unrelated to the inmate's medical needs.  Wakefield, 177
F.3d at 1165 ("too busy"); see Chance, 143 F.3d at 703-04 (finding
that deliberate indifference may be alleged where a physician
pursues a treatment plan that is not "derive[d] from sound medical
judgment[]"); Jones v. Johnson, 781 F.2d at 771 (budget concerns).

The Defendants confuse the issue by arguing that the right was not clearly established because a delay in treatment must cause the inmate substantial harm.  (Mot. Dismiss Attach. #1 Mem. P. & A. 15, ECF No. 29 (citing Bowen, 492 F. Supp. 2d at 1213).  In Bowen, the plaintiff argued that the defendants were deliberately indifferent because they knew about plaintiff's hernia and could have provided surgery, but they delayed his treatment.  Bowen, 492 F. Supp. 2d at 1213.  The court found that any delay in plaintiff's surgery resulted from the time that it took the "MAR committee" to authorize the procedure, and plaintiff failed to demonstrate that the delay in receiving surgery caused him substantial harm.  Id. at 1213-14.  Notably, there was no allegation that the delay was the result of nonmedical considerations.  Here, in contrast, the issue is not whether the delay in medical tests caused Goolsby substantial harm, but whether the Defendants' reasons for ignoring the prior doctors' orders were based on "sound medical judgment." The law applicable to Goolsby's deliberate indifference allegations was clearly established on December 16, 2008, the date Plaintiff was transferred to Donovan.  Defendants cannot interfere with previously ordered medical treatment for reasons unrelated to medical needs.

Second, viewing the facts in the light most favorable to Plaintiff, a rational prison official in these circumstances would believe that his or her conduct was unlawful.  See Estate of Ford, 301 F.3d at 1045.  "The relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier, 533 U.S. at 202.  "If the law did not put the officer on notice that his

conduct would be clearly unlawful, . . . qualified immunity is appropriate." Id.

Goolsby alleges that Dr. Ridge was his treating physician at Donovan for approximately two weeks. (Second Am. Compl. 5, 8, ECF No. 25.)  During that time, a screening nurse telephoned Dr. Ridge and described Plaintiff's injuries. (Id. at 6.)  The doctor told the nurse that he would examine Plaintiff within three days. (Id.) The screening nurse told Goolsby that although physicians at the county jail had ordered an MRI, colonoscopy, and endoscopy for him, Ridge never orders the tests because they cost too much. (Id.) Dr. Ridge never met with Plaintiff. (Id. at 8.)  Nurse Sheriff, too, told Plaintiff that Ridge would not likely order the medical tests before Goolsby was transferred out of Donovan because of the doctor's high workload. (Id. at 7.)  Defendant Ridge never ordered the MRI, endoscopy, or colonoscopy.

Plaintiff alleges that Dr. Martinez was his treating physician for one and one-half months. (Id. at 9-11.)  Nurse Sanchez telephoned Dr. Martinez in front of Goolsby, and Martinez asked Sanchez whether Plaintiff was an "endorsed" inmate; when she said no, Dr. Martinez told her to let the assigned prison "deal with" Goolsby. (Id. at 9-10.)  Later, Plaintiff wrote a grievance and handed it to Correctional Officer Gamble to give to Dr. Martinez. (Id. at 10.)  Goolsby observed Gamble hand the grievance to the doctor. (Id.)  After reading it, Dr. Martinez said that because Goolsby was not endorsed at Donovan, the doctor would not order the medical tests because they cost too much. (Id. at 11.)  Defendant Martinez never ordered the MRI, endoscopy, or colonoscopy.

A reasonable physician in the Defendants' positions would know that refusing to order the medical tests previously ordered by doctors at county jail for workload or budgetary reasons was unconstitutional.  <u>See, e.g.</u>, <u>Lopez</u>, 203 F.3d at 1132 (finding that deliberate indifference may be established by showing that a prison official intentionally interfered with an inmate's medical treatment); <u>Wakefield</u>, 177 F.3d at 1165 & n.6 (holding that "a prison official acts with deliberate indifference when he ignores the instructions of the prisoner's treating physician or surgeon[]"); <u>Chance</u>, 143 F.3d at 703-04 (noting that deliberate indifference may be shown by alleging the defendant pursued a treatment plan that was not derived from "sound medical judgment[]"); <u>Goring</u>, 1997 U.S. Dist. LEXIS 1464, at *7 (finding that plaintiff alleged deliberate indifference where defendant's decision to not follow the prior doctor's recommendation to give diagnostic tests was based on fiscal, rather than medical, concerns).

Both Dr. Ridge and Dr. Martinez are alleged to have been aware of the orders for tests from the doctors at county jail and failed to follow up on the orders.  By 2008, it was clear that interfering with the prior physicians' orders for reasons unrelated to Goolsby's medical care can constitute deliberate indifference in violation of the Eighth Amendment.  Neither Defendant is entitled to qualified immunity from liability.  Accordingly, the Motion to Dismiss Goolsby's claim for civil damages against both Defendants on this ground is **DENIED**.

**E.    Injunctive Relief**

Finally, Plaintiff seeks a mandatory injunction to receive an MRI of his right shoulder.  (Second Am. Compl. 14, ECF No. 25.)  Defendants assert that the Court may not issue an injunction that affects the rights of persons not before the Court and not otherwise subject to its jurisdiction.  (Mot. Dismiss Attach. #1 Mem. P. & A. 15, ECF No. 29.)  Because Goolsby is currently housed at California Correctional Institution, and the medical personnel at that prison are not before the Court, Defendants argue that Plaintiff's request for injunctive relief should be denied.  (Id. at 15-16.)

Injunctive relief is an equitable remedy that is appropriate where a plaintiff can establish he will suffer a "likelihood of substantial and immediate irreparable injury" if an injunction is not granted.  Hodgers-Durgin v. De La Vina, 199 F.3d 1037, 1049 (9th Cir. 1999) (quoting City Los Angeles v. Lyons, 461 U.S. 95, 111 (1983)); see also Doran v. Salem Inn, Inc., 422 U.S. 922, 932 (1975).  "'A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court.'"  Price v. City of Stockton, 390 F.3d 1105, 1117 (9th Cir. 2004) (quoting Zepeda v. I.N.S., 753 F.2d 719, 727 (9th Cir. 1983)).  "[A]n injunction must be narrowly tailored "to affect only those persons over which it has power . . . ."  Id.

Goolsby is no longer incarcerated at Donovan, where Defendants Ridge and Martinez are employed.  Because he is currently housed at an institution that provides medical care to its inmates,

California Correctional Institution in Tehacapi, California [ECF No. 36], Plaintiff has not shown that he is entitled to the injunctive relief he seeks.  Furthermore, the Court does not have jurisdiction over the personnel at Goolsby's current prison.  For all these reasons, his request for injunctive relief is **DENIED**.

    **IV.   MOTION FOR ORDER ON DEFENDANTS' MOTION TO DISMISS**

    In his Motion for Order on Defendants' Motion to Dismiss, Goolsby asks that the Court issue a ruling on the Motion to Dismiss.  (Mot. Order Defs.' Mot. Dismiss 1, ECF No. 38.)  In light of this Order, Goolsby's Motion [ECF No. 38] is **DENIED** as moot.

    **V.   CONCLUSION**

    Goolsby's claim that Dr. Martinez was deliberately indifferent for failing to order that Plaintiff's walker be returned to him, whether construed as either an independent walker claim or a realleged failure-to-examine cause of action, fails.  To the extent it constitutes a new deprivation-of-medical-appliance claim, it is unexhausted; to the extent it is a realleged failure-to-examine claim, it was previously dismissed from this lawsuit without leave to amend.  Martinez's Motion to Dismiss this claim is **GRANTED** without leave to amend.  Defendant Martinez's Motion to Dismiss count three of the Second Amended Complaint, the unexhausted claim for retaliation, is **GRANTED** without leave to amend.

    Defendant Ridge's Motion to Dismiss the Eighth Amendment cause of action against him in count one for failing to order the diagnostic tests previously ordered by doctors as county jail is **DENIED**.  Dr. Martinez's Motion to Dismiss the Eighth Amendment cause of action in count two for failing to order the medical tests is also **DENIED**.  Neither Defendant is entitled to qualified

immunity, and their Motion to Dismiss Plaintiff's claim for civil
damages on this basis is **DENIED**.  Finally, the Court does not have
jurisdiction over the personnel at Goolsby's current prison and his
request for injunctive relief is **DISMISSED**.

Defendants' answer to the Second Amended Complaint must be
filed no later than April 23, 2012.

**IT IS SO ORDERED**.


DATE:  March 29, 2012

RUBEN B. BROOKS
United States Magistrate Judge

cc:
All Parties of Record